DILLON *et al.*, *Plaintiffs in Error*, v. HUNT, *Executrix.*

DIVISION TWO.

1. **Trespass:** ADJACENT LAND-OWNER : INDEPENDENT CONTRACTOR. Where a proprietor undertakes to do an act on his land which is in its nature dangerous to adjoining owners, he is required to use reasonable care not to work a trespass on their possession, and it is immaterial whether the work is done by the proprietor or by an independent contractor.

2. **Evidence.** Irrelevant evidence is inadmissible on the trial of a cause.

3. **Tort :** DAMAGES : INSURANCE MONEY. Where an owner of a burned building, in taking down its walls, injures the goods in the store of an adjacent proprietor, the damage of the latter will not be diminished by the amount of insurance money received by him for the injury to the goods.

*Appeal from St. Louis City Circuit Court.*—HON. A. M. THAYER, Judge.

REVERSED AND REMANDED.

THIS is an action for damages caused by the negligent pulling down of a brick wall upon the building in which plaintiffs' stock of goods was stored in the city of St. Louis on November 17, 1877.

The petition in this case was passed upon by this court in this cause in 82 Mo. 150, and held good on demurrer.

The answer is as follows : "Defendant for answer to the petition of Thomas E. Dillon, Martha Jessel and Joseph Jessel, plaintiffs : *First.* Denies that Joseph Jessel, as husband of said Martha Jessel, is a necessary or proper party to this action, and says objection to him as a party herein will at all times be made. *Second.*

Denies that said Martha Jessel and said Thomas E. Dillon were partners, as alleged, and denies said alleged firm, or said plaintiffs, or either of them was, or were, owners of, or in possession of, any of the goods, wares or chattels in the petition mentioned, at the place mentioned, or engaged in the business alleged, or that said chattels were of the value alleged, or of any value. *Third.* Defendants admit that Charles L. Hunt was the owner of the building and lot in the petition described, but denies the same was adjoining any store-room or building occupied by plaintiffs. *Fourth.* Defendant admits a fire, which defendant says was accidental and occurred in his absence and was beyond control before it was discovered, did occur, and his building was in great part destroyed thereby ; but defendant denies defendant knew, as alleged, said walls and chimneys left standing were in unsafe, insecure and dangerous condition, or a nuisance, or liable to fall, as alleged, and denies that it was defendant's duty to abate the same. *Fifth.* Defendant denies he was in possession of said premises, walls or chimneys, as alleged, or had full or any control or direction of the same, and he denies he allowed or permitted, either knowingly, negligently or in any way certain, or any persons or person to enter upon said premises for the purpose alleged, or any purpose ; or that their action inured to defendant's benefit. *Sixth.* Defendant denies that any person or persons negligently or unskilfully pushed or threw or caused said walls or portions thereof to fall as alleged, or that the same did so fall, or that said house was crushed and destroyed, or the chattels contained therein were covered with the *debris.* *Seventh.* Defendant denies he either knew or had good reason to know that said person or any persons either undertook to tear down said walls or intended to adopt, or did adopt, the method alleged in the petition, or that defendant neglected his duty as alleged, or permitted the work to be proceeded with as alleged. *Eighth.* Defendant denies

any portions of said goods were mutilated or otherwise injured, either in the sum as alleged, or any other sum, or that fixtures were damaged as alleged or in sum alleged, or that said firm expended the sum alleged, or any sum, for clearing away *debris*, or that said firm had a lease, as alleged, or had paid rental as alleged, or lost the use of said storeroom, or that the pretended unexpired term of said lease was of the value alleged, or any value, or that said firm expended the sum alleged, or any sum, in recovering, handling, preserving or removing said chattels, or that the plaintiffs were damaged in the sum of $3,000, or any other sum, as alleged. And defendant asks to be hence dismissed with his costs."

The following is a concise statement of the facts disclosed by the record which raise the questions now presented to this court for determination, to-wit:

The plaintiffs as copartners occupied, with a stock of general merchandise, the first floor of a three-story building, number 110 North Fourth street, in the city of St. Louis, and the defendant's testator, Charles L. Hunt, owned a five-story building immediately adjoining it on the south. On the night of the thirteenth day of November, 1877, the Hunt building caught fire, and all the interior combustible portions of it burned, which left the north wall and a partition wall, running east and west, standing, but in a very dangerous condition, and liable at any time to fall over upon the building occupied by plaintiffs. Plaintiffs' stock of goods was considerably damaged by the fire and water on the night of November 13. A day or two after the fire, chief of the fire department, Sexton, notified Hunt that the standing walls were dangerous, and that he would have to remove them. After this notice, Hunt knowingly permitted others to go upon his premises for the purpose of taking the walls down, and while these persons were so engaged, on the seventeenth of November, they negligently threw portions of the north wall mentioned above over upon the building occupied by

plaintiffs, by means whereof the latter building was crushed, and the plaintiffs' stock of goods damaged still more. This action is for the recovery of the latter damage.

Plaintiffs had several policies under which their stock of goods was insured against damage by fire and water. After the fire on the thirteenth, and before the fall of the wall on the seventeenth, the loss under these policies, excepting one, resulting from fire, were adjusted, and the policies canceled; and after the fall of the wall, and before the institution of the suit, plaintiffs settled with the company, which issued the remaining policy, for a portion of the losses occurring thereunder.

There was evidence to sustain the allegations of the petition. Mr. Hunt died after the suit was brought. One of the principal issues at the trial was, whether or not Hunt authorized or permitted the parties, who negligently threw the walls down, to go upon his premises for the purpose of taking them down, and during the progress of the trial Fred C. Ziebig was permitted to testify, over the objections and exceptions of plaintiffs, that he, as the agent of Mr. Hunt, had made no arrangement with anybody for taking down the walls; that he did not at the time know the walls were being taken down, or that anybody had been working on them.

John W. Munson, another witness for defendant, was also permitted to testify, over the objections and exceptions of plaintiffs, to the effect that he had a conversation with Mr. Hunt about the walls after the notice from the chief of the fire department, and that he had told Mr. Hunt not to do anything with the walls at all that would affect his, Hunt, or the insurance companies' interest; that he told Hunt not to do anything with the pulling down of the walls until later.

Walter C. Butler, another witness on behalf of defendant, was permitted to testify, over the objections and exceptions of the plaintiffs, to the effect that the

plaintiffs had $6,000 insurance on their stock of goods, and that the plaintiff, Dillon, made claim to him orally for damages under the policies.

The court also admitted in evidence, over plaintiff's objections and exceptions, a written or printed claim made by plaintiff Dillon to one of the insurance companies for loss on plaintiffs' stock of goods. This, with Butler's statement and other evidence, tended to show that plaintiffs had received some compensation from the insurance companies, under their policies for damages resulting from the fall of the walls.

Upon this last point the court gave the following instruction on behalf of the defendant: "2. The jury are instructed, if they find from the evidence that the plaintiffs under the name of T. E. Dillon had insured the stock of goods injured by the falling of the walls of Hunt's building, and claimed and collected from the insurance companies, or any of them, damages to such stock caused by the falling of the walls as a result of the fire, then the jury are authorized and directed to deduct from the gross damage, if any, which the jury may believe plaintiffs have sustained in consequence of the falling of the wall, the amount of such damages as plaintiffs are shown to have collected from said insurance companies occasioned by the falling of the wall."

After the jury had been out some time considering of their verdict, they sent to the court the following written communication:

" *To the Honorable Judge of the Circuit Court, Room Number 5.*

"The instructions of the court seem to have blended the damage suit with the insurance; we wish to know if the parties having received insurance bars them out from damages from other parties. Please give us the law upon this subject."

Whereupon the court, over the objection and exceptions of the plaintiffs, gave to the jury the following additional instruction: "If the jurors believe that

Dillon v. Hunt.

after the walls fell the plaintiffs claimed damages from the insurance companies that were occasioned by the falling of the walls of the Hunt building, as well as for damages caused by water, and that the insurance companies paid plaintiffs for any part or portion of the damages so occasioned by the falling of the walls, as well as for damages occasioned by water, then, in estimating plaintiffs' damages in this case, you should deduct whatever damages occasioned by the falling of the walls he has already received from the insurance companies; in other words, the court instructs you that plaintiff is not entitled to recover damages from the defendant occasioned by the falling of the walls that have already been paid by the insurance companies. At the same time the court instructs you, that, if any part of plaintiffs' damages occasioned by the falling of the walls has not been paid, he is entitled to recover in this action such part as has not been paid, whatever you may find such amount to be, providing under the other instructions you find that defendant is liable in this action for the acts of the persons who took down the walls.''

The jury thereupon returned a verdict for defendant. Plaintiffs filed their motion for a new trial, saving the several points mentioned above, which, being overruled, they filed their bill of exceptions, and afterwards brought the case here by writ of error.

*C. P. & J. D. Johnson* for plaintiffs in error.

(1)   Plaintiffs in error have a right of action against the defendant in error. *Dillon v. Hunt*, 11 Mo. App. 246; *Dillon v. Hunt*, 82 Mo. 151; *Stone v. Hunt*, 94 Mo. 475. (2)   The trial court erred in permitting the witness Zeibig to testify that he had made no arrangement for taking down the walls; that he, the witness, did not know of the walls being taken down or that anybody was working on them.   These statements were

irrelevant and misleading to the jury. (3) The trial court also erred in permitting the witness Munson to state the conversation between himself and Mr. Hunt relative to taking down the walls. The witness' statements upon the point were both incompetent and irrelevant, and had a tendency to mislead the jury. (4) It was also error for the trial court to permit the witness, Butler, to testify what insurance plaintiffs had upon their stock of goods, and to instruct the jury that any moneys received by plaintiffs under their contracts of insurance went in mitigation of the damages sustained by plaintiffs by reason of the falling of the walls. 1 Sutherland on Damages (1882), p. 242; *Cunningham v. Railroad*, 102 Ind. 478; *Railroad v. Dickerson*, 59 Ind. 317; *Sherlock v. Alling*, 44 Ind. 184; *Weber v. Railroad*, 35 N. J. L. 412; s. c., 36 N. J. L. 213; *Ins. Co. v. Railroad*, 25 Conn. 265; *Peoria, etc., v. Frost*, 37 Ill. 333; *Perrott v. Shearer*, 17 Mich. 48; *Clarke v. Wilson*, 103 Mass. 219; *Hayward v. Cain*, 105 Mass. 213; *Harding v. Townshend*, 43 Vt. 537; *Althof v. Wolfe*, 22 N. Y. 355; *Kingsbury v. Westfall*, 61 N. Y. 356 *Carpenter v. Trans. Co.*, 71 N. Y. 574; *Merrick v. Brainerd*, 38 Barb. 589; s. c., 34 N. Y. 208; *Briggs v. Railroad*, 72 N. Y. 26; *Rockingham v. Bosher*, 39 Me. 255.

*Noble & Orrick* for defendant in error.

(1) Where one renders a service in the course of an independent occupation, representing the employer only as to the result of his work, and not as to the means by which it was accomplished, he is "contractor" in the legal significance of the word; that is, the relation of master and servant does not exist between the parties to the extent of rendering the one liable for the other's negligent acts. *Clapp v. Kemp*, 132 Mass. 481; *Andrews v. Bredecki*, 17 Ill. App. 213; *Mathes v. Kerrigan*, 55 N. Y. Sup. 431; *Mahew v. Mining Co.*, 76 Me. 100. (2) An employer is not liable for the negligence of the "contractor." *Barry v. St. Louis*, 17 Mo.

121 ; *Harriman v. Stowe,* 57 Mo. 98 ; *Blumb v. Kansas City,* 84 Mo. 118 ; *Fox v. Young,* 22 Mo. App. 389 ; 1 Shearman & Redfield on Neg., sec. 168, and cases cited ; Wood on Law of Master & Servant [ 2 Ed. ] p. 594, note 1, and cases cited ; Broom's Legal Maxims [ 8 Ed. ] p. 849, notes 1, 2, 3 and 4, and cases cited.   ( 3 ) An apparent exception to this rule exists where the thing to be done is, in itself, a nuisance.   If, however, the act in question can be done without injury, the maxim *respondeat superior* only applies where the relation of master and servant, *pro hac vice,* is established between the tort-feasor and the defendant.   Wharton on Negligence, sec. 818 ;   Broom's Legal Maxims [8 Ed.] p. 847, note 3, and cases cited ; Wood on Law of Master & Servant, [ 2 Ed. ] sec. 313, cases cited.

GANTT, P. J.—When this cause was here on the former appeal, this court affirmed the judgment of the St. Louis court of appeals in reversing the judgment of the St. Louis circuit court.   Without repeating at length the grounds upon which the court of appeals held plaintiff would be entitled to recover, it is sufficient to state, that it was then held and supported by the authorities that where a proprietor undertakes to do that upon his land 'which is in its nature dangerous to adjoining proprietors he must use reasonable care to work no trespass upon their possession, and it is immaterial in such a case whether the work be done by the proprietor, or by an independent contractor.   *Dillon v. Hunt,* 11 Mo. App. 246.

So on the trial of this cause the court instructed the jury that if plaintiffs' goods were destroyed by the falling of a brick wall, then standing on the adjoining lot of Charles L. Hunt, the present defendant's testator, that said wall was caused to fall upon the storeroom in which plaintiffs' goods were by and through the negligence of certain persons who went upon said premises for the purpose of taking down said wall by and with the

Dillon v. Hunt.

knowledge and consent of said Hunt, and that said Hunt then and there had the custody and control of the premises upon which said wall stood, then plaintiffs were entitled to recover of said Hunt's estate.

It will be seen at once that one of the most material facts necessary to plaintiffs' recovery was the privity of Hunt with the parties who were pulling down the wall, and plaintiffs offered the direct evidence of Mr. Sexton, the chief of the fire department, tending to show his official notice to Mr. Hunt of the dangerous condition of the wall and directing him to have it taken down, and of Mr. Fruin of Mr. Hunt's desire to have him bid on the work of removing the wall and his recollections of the men who did the work.

On the part of the defendant the court permitted Fred Ziebig to testify that he was Hunt's agent for the collecting of the rents, etc., of this building and that he, Ziebig, made no contract with anybody to remove the wall; and that he did not know the walls were being taken down. To this evidence plaintiffs objected at the time, and saved their exceptions. It was clearly incompetent.

It was wholly irrelevant whether Ziebig knew anything about the matter. Mr. Hunt was the owner. It was shown beyond a peradventure that he was in the city the day after the fire; talked with Sexton in the immediate view of the wall; was notified then by Sexton at the time to have it removed on account of its danger. In Hunt's absence notice to Ziebig might under some circumstances have become notice to Hunt, but notice to Hunt need never have become notice to Ziebig, as under the facts it was wholly immaterial whether Ziebig had notice.

Again, the court, over the objection of plaintiffs, permitted Munson, the insurance agent, to testify that he told Hunt not to pull down the wall. This conversation, as to plaintiffs, was "*res inter alios acta.*" It had nothing to do with plaintiffs' rights, nor could it in

Dillon v. Hunt.

the least affect Hunt's responsibility. The admission of this evidence of Ziebig and Munson, tending to show want of notice in Hunt, was clearly erroneous.

But the most serious error committed on the trial was the giving of the second instruction on behalf of defendant set forth in full in the statement of this cause, and the subsequent instruction reiterating the same idea given by the court of its own motion. That instruction permitted the jury in assessing plaintiffs' damages to reduce the same by the amount of any insurance money they might believe from the evidence plaintiffs had received for losses occasioned by the falling of the wall on their goods. If plaintiffs' goods were damaged by the negligence of Hunt or his employes, it was no concern of theirs, that plaintiffs were insured, and all the evidence of this insurance was irrelevant and incompetent, and the instruction allowing this insurance as mitigating the damages of plaintiffs was erroneous.

Few propositions have been so universally accepted and settled as this.

Sutherland on Damages lays down the rule as follows: "There can be no abatement of damages on the principle of partial compensation received for the injury, where it comes from a collateral source, wholly independent of the defendant, and is as to him *res inter alios acta.* A man who was working for a salary was injured on a railroad by the negligence of the carrier; the fact that the employer did not stop the salary of the injured party during the time he was disabled was held not available to the defendant, sued for such injury in mitigation. Nor will proof of money paid to the injured party by an insurer or other third person, by reason of the loss or injury, be admissible to reduce damages in favor of the party by whose fault such injury was done. The payment of such moneys not being procured by the defendant, and they not having been either paid or received to satisfy in whole or in part his liability, he can derive no advantage therefrom

in mitigation of damages for which he is liable. As has been said by another, to permit a reduction of damages on such a ground, would be to allow a wrongdoer to pay nothing, and take all the benefit of a policy of insurance without paying the premium." 1 Sutherland on Damages (1882), p. 242. And he is sustained by the following authorities: *Cunningham v. Railroad*, 102 Ind. 478; *Weber v. Railroad*, 35 N. J. L. 412; *Ins. Co. v. Railroad*, 25 Conn. 265; *Hayward v. Cain*, 105 Mass. 213; *Briggs v. Railroad*, 72 N. Y. 26; *Rockingham v. Bosher*, 39 Me. 255, and many other cases.

That these errors contributed largely to the verdict for the defendant is almost self-evident. And to the end that they may be remedied in another trial, the judgment is reversed and the cause remanded. All concur.