WILLIAMS v. RAILROAD.

(Filed March 27, 1906).

*Railroads—Fires—Negligence—Opinion by the Judge—Evidence.*

1. A prayer to charge that "even if the fire was communicated to the defendant's right-of-way, the plaintiff cannot recover, for the engine was in good repair and equipped with an improved spark arrester for preventing the escape of sparks, and was managed and operated in a careful manner by a skillful and competent engineer, and the evidence as to this is uncontroverted and uncontradicted," was properly refused because it would have been an expression of opinion upon the facts, forbidden by Revisal, section 535.

2. If fire escapes from an engine in proper condition, having a proper spark arrester, and operated in a careful way by a skillful and competent engineer, and the fire catches off the right-of-way, the defendant is not liable, for there is no negligence.

3. If fire escapes from an engine in proper condition, with a proper spark arrester, and operated in a careful way by a skillful and competent engineer, but the fire catches on the right-of-way, which is in a foul and negligent condition, and thence spreads to the plaintiff's premises, the defendant is liable.

4. If fire escapes from a defective engine, or defective spark arrester, or from a good engine not operated in a careful way or not by a skillful engineer, and the fire catches off the right-of-way, the defendant is liable.

5. In an action for damages for negligently setting fire to plaintiff's woods by sparks from defendant's engine, evidence that the right-of-way was foul and the discovery of the fire on the right-of-way 30 minutes after defendant's train passed, was sufficient to submit the question to the jury.

ACTION by W. H. Williams against the Atlantic Coast Line Railroad Co., heard by *Judge W. R. Allen* and a jury, at the November Term, 1905, of the Superior Court of DUPLIN. From a judgment for the plaintiff, the defendant appealed.

*Rountree & Carr* and *Carlton & Williams* for the plaintiff. *Junius Davis* and *H. L. Stevens* for the defendant.

CLARK, C. J. This action is for the recovery of damages for negligently setting fire to and burning the woods of the plaintiff by sparks from an engine falling upon a foul right-of-way. The errors assigned are: 1. Refusal to nonsuit. 2. That there was no evidence that the fire originated from the defendant's engine. 3. Refusal to charge that "even if the fire was communicated to the defendant's right-of-way, the plaintiff cannot recover, for the engine was in good repair and equipped with an improved spark arrester for preventing the escape of sparks, and was managed and operated in a careful manner by a skillful and competent engineer, and the evidence as to this is uncontroverted and uncontradicted."

This prayer was properly refused because it would have been an expression of opinion upon the facts, forbidden by the Act of 1796. Revisal, section 535. Though a witness may be uncontradicted, it is for the jury to say whether they believe him. The judge is prohibited from expressing an opinion that "a fact is fully or sufficiently proved, such matter being the true office and province of the jury." Revisal, section 535. Besides, though the fact were found by the jury that the fire was not set out by a defective engine, the legal conclusion in the prayer is incorrect, if the fire began on a foul right-of-way. The rules of negligence applicable to cases of this kind are:

1. If fire escapes from an engine in proper condition, having a proper spark arrester, and operated in a careful way by a skillful and competent engineer, and the fire catches off the right-of-way, the defendant is not liable, for there is no negligence.

2. If fire escapes from an engine in proper condition, with a proper spark arrester, and operated in a careful way by a skillful and competent engineer, but the fire catches on the right-of-way, which is in a foul and negligent condition, and thence spreads to the plaintiff's

premises, the defendant is liable. *Moore v. Railroad,*
124 N. C., 341; *Phillips v. Railroad,* 138 N. C., 12.

3. If fire escapes from a defective engine, or defec-
tive spark arrester, or from a good engine not oper-
ated in a careful way or not by a skillful engineer, and
the fire catches off the right-of-way, the defendant is
liable.

In the first case there would be, as above stated, no negli-
gence. In the second the foul right-of-way would be negli-
gence, and in the third the defective engine or spark arrester,
or the negligent operation of a good engine, would be negli-
gence.

The other two exceptions of the defendant amount simply
to a claim that there was no evidence that the fire proceeded
from the defendant's engine. No one testified that he saw the
sparks fall from the engine upon the right-of-way. It is
rarely that this can be shown by eye-witnesses, for it would
usually happen that if the sparks were seen at the moment of
falling and igniting the stubble, the fire would be put out by
the observer. But here the fire was seen on the right-of-way,
it burnt along the track between the ditch and the ends of the
ties, and thence had gone into the woods. The wind was
blowing from the northwest across the track, the fire being on
the south side. Two witnesses testified that they first saw
the smoke about 30 minutes after the defendant's engine
passed. How long before that the fire began no one knew, but
there was no fire before the engine passed. The other witnesses
first saw the fire after a longer interval; and there was evi-
dence that the fire burnt both ways. These were matters for
the jury. The evidence was plenary that the right-of-way
was foul, with much combustible matter on it, bushes having
been cut down and allowed to lie. Indeed the fact that the
right-of-way was burned over is evidence of combustible mat-
ter thereon, and the section master stated in his testimony that
it was not kept cleaned off.

140——40

In *McMillan v. Railroad,* 126 N. C., 726, it is said that "No spark arrester can be so constructed as to entirely prevent the emission of sparks without destroying the efficiency of the engine, and while it is not negligence in the defendant to run such an engine over its road, the fact that it had recently passed over the road and fire was found there, was some evidence tending to show that it emitted sparks that set the grass on fire." The evidence of the negligent and foul condition of the track and the discovery of the fire so soon after the defendant's train passed, was sufficient to submit the question to the triers of the facts. The court was not authorized to draw the inferences of fact from this testimony.

In *Armstrong v. Railroad,* 130 N. C., 66, there was no evidence that the fire originated upon the right-of-way, or that connected it with the engine in any way. In *Ice Co. v. Railroad,* 126 N. C., 797, there was no evidence that the engine was defective nor that the right-of-way was foul. In *Cheek v. Lumber Co.,* 134 N. C., 225, there was no spark arrester, but on the conflicting evidence whether sparks from the engine caused the fire, the jury found that they did not.

It was the plaintiff's right to have this case submitted to the jury. Though we know that the words *judicium parium suorum,* in *Magna Carta,* chapter 39, did not either create or guarantee the right of trial by jury (as at one time was erroneously thought), McKechnie *Magna Carta,* 452, trial by jury having been instituted after that time, still in the process of time and the evolution of law, it has become a part of the "law of the land." The Constitution of the State, Article I, section 19, guarantees it as a "sacred and inviolable" right in civil cases, and section 13 of the same article guarantees the same right in criminal actions. We know that the failure to insert a similar guarantee in the Constitution of the United States was one of the chief grounds of objection to its ratification, an objection which was only cured by an understanding that amendments guaranteeing the right of trial by jury in

the Federal Courts should be adopted, which was done by the First Congress, and being promptly ratified by the States, they now constitute the Sixth and Seventh Amendments.

A right so guaranteed should not be denied, unless it is clear that there is no evidence. As was said in *State v. Kiger,* 115 N. C., 751: "If the presiding judge deems that the verdict is against the weight of the evidence, or that the evidence was insufficient in his judgment to justify conviction, he is vested with the power to set aside the verdict and grant a new trial. This is a matter of discretion, and his granting or refusing a new trial on such ground is not subject to review here. The fact that the twelve men have convicted on the evidence will often and properly make him less sure of his own opinion to the contrary." This case has been repeatedly cited with approval.

In *State v. Chancy,* 110 N. C., at p. 508, *Shepherd, J.,* says: "In some jurisdictions it has been held that if the testimony be such that the judge would set the verdict aside as being against the weight of the evidence, it should not be submitted to the jury; but this, according to our decisions, would be an usurpation of the functions of that body," citing *State v. Allen,* 48 N. C., 257; *Wittkowsky v. Wasson,* 71 N. C., 451, and then adds, "perhaps what is 'reasonably sufficient' evidence, as understood in North Carolina, is best stated by *Battle, J.,* in *Jordan v. Lassiter,* 51 N. C., 131. He says that if the circumstances 'be such as to raise more than a mere conjecture, the judge cannot pronounce upon their sufficiency to establish the fact, but must leave them to be weighed by the jury, whose exclusive province it is to decide upon the effect of the testimony.'"

No more subtle and adroit application could be addressed to a trial judge than a motion of this kind with its necessary implication that the jury may do wrong and injustice, and that the superior intelligence and greater impartiality of the judge are invoked to prevent it. But the experience and the wis-

dom of the ages and the deliberate judgment of the people, as embodied in the Constitutions of both the State and the Union, are conclusive that in passing upon the facts the opinion of one man, though skilled in the law, is not deemed superior to that of twelve men of the vicinage, but is held to be decidedly inferior and to be guarded against—so much so that the guarantee of a trial by jury in both civil and criminal cases is placed in the organic law which every judge is sworn to observe before he is permitted to discharge his functions.

No Error.