N. R. DEPPE v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 9 March, 1910.)

1. **Motion to Nonsuit—Evidence, How Considered.**

   Upon a motion to nonsuit upon the evidence, the evidence must be construed in the view most favorable to the plaintiff, and every fact which it tends to prove, and which is an essential ingredient of the cause of action must be regarded as established.

2. **Negligence — Railroads — Sparks from Engine — Evidence — Origin—Primal Cause.**

   When, in an action for damages for the destruction of plaintiff's lumber dry-kiln by fire alleged to have been caused in the daytime, by a spark from defendant railroad company's locomotive, the plaintiff has introduced evidence of the condition and

surrounding of the kiln, tending to exclude the possibility of
the fire originating therein, and there is evidence that a short
time before the fire was discovered the locomotive was shifting
cars near the kiln, that it had enveloped the kiln in smoke,
that the fire was discovered near a ventilator in the top of the
kiln, it is sufficient to take the case to the jury upon the ques-
tion as to whether the primal cause of the fire was a spark
from the locomotive entering the kiln through the ventilator;
and it was unnecessary to prove directly by eye-witnesses that
such was the cause.

3. Negligence—Railroads—Evidence—Spark from Engine—Proper
Equipment—Rebuttal.

Where there is competent evidence to show that a fire to
plaintiff's lumber dry-kiln originated from a spark from defend-
ant's locomotive, it is sufficient to charge the latter with negli-
gence; and the burden is upon it to show that it had used all
the precautions for confining sparks or cinders which are ap-
proved and in general use, and that the appliances furnished
were used by a competent and skilled engineer in a careful way.

APPEAL from *Guion, J.,* at November Term, 1909, of CRAVEN.
At the close of plaintiff's evidence the defendant moved for
judgment as upon a nonsuit. His Honor sustained the motion,
to which ruling plaintiff excepted and appealed to this Court.
The facts, as established by the evidence, are stated in the opin-
ion of the Court.

*D. L. Ward* and *D. E. Henderson* for plaintiff.
*Moore & Dunn* for defendant.

MANNING, J. This case being presented to us upon motion
for judgment, under the statute, made by the defendant at the
conclusion of plaintiff's evidence, the rule established by this
Court for the consideration of the evidence is thus stated:
"The evidence must be construed in the view most favorable to
the plaintiff, and every fact which it tends to prove and which
is an essential ingredient of the cause of action must be estab-
lished, as the jury, if the case had been submitted to them,
might have found those facts from the testimony." *Cotton v.
R. R.,* 149 N. C., 227; *Brittain v. Westhall,* 135 N. C., 492;
*Freeman v. Brown,* 151 N. C., 111.

The plaintiff sues to recover damages for the negligent de-
struction, by fire, of two dry-kilns, a large lot of lumber and a
sawmill plant and appurtenances, located at Deppe, in Onslow
County, and near a track of the defendant. The fire occurred
on the morning of 15 August, 1908. A freight train operated
by the defendant stopped, on that morning, at Deppe and the
engine was, for fifteen or twenty minutes, shifting cars back-
wards and forwards on the sidetrack running to plaintiff's

DEPPE *v.* RAILROAD.

plant; that the kilns were built near the sidetrack, 60 feet from it; they lay lengthwise along the track, and in the green end of the kiln, *i. e.,* the end through which the trucks full of lumber are run in to the kiln; at the top there was a ventilator, 4 or 4½ by 8 feet, opening back about 6 or 7 feet high; the kilns were each about 20 feet wide, and were used for drying-out lumber; they were heated by steam conducted in iron pipes from a boiler 156 feet away; the pipes, after reaching the kilns, were laid on iron pipes in the bottom of the kilns and the ventilators were used for the discharge of the hot air moistened by the water from the lumber; the kilns were tightly built, and no fire was in or about them; from the iron pipes to the place where the fire was discovered in the top of the kilns was 12 to 14 feet. When the fire was discovered near the top of the kiln and near the ventilator, between the ceiling and the roof, no fire was discovered around the pipes or nearer them than the ventilator. The ventilators were open. The wind was blowing from the railroad track towards the kilns, and they were enveloped in the black smoke of the shifting engine while there. The boiler, which furnished the steam heat to the kiln, was 156 feet away from the kiln, and the wind was blowing its smoke and cinders from its smokestack away from the kilns. Only one of the two kilns was heated the morning of the fire. The mill was idle and no fire in its boiler. It was in evidence that it was impossible for the fire, occurring in the part of the kiln, where it was when first seen, to have been caused by the steam-heated pipes. The time between the departure of the defendant's train and the breaking-out of the fire was estimated by the witnesses to have been from three-quarters of an hour to an hour and three-quarters; some of them described it as a short time. The witnesses explained in detail the construction of the kilns, the location in them of the steam pipes, and a map of the premises was used, showing the relative location and distances of the sawmill, lumber sheds, kilns, boiler and railroad tracks.

The first question, therefore, presented is, "Was the defendant's engine the origin of the fire?" Does the evidence, construed in the view most favorable to the plaintiff, tend to prove this primal fact?

The defendant contends that no witness testified that he saw sparks emitted by the engine or that he saw the sparks from the defendant's engine ignite the plaintiff's lumber kiln. In considering this contention, it must be remembered that this fire occurred in the daytime—in the brilliancy of a summer sun, rendering sparks emitted by an engine incapable of being seen by the human eye. That no one saw the sparks ignite the burned property was the fact in *McMillan v. R. R.,* 126 N. C.,

725, and *Williams v. R. R.,* 140 N. C., 623; in which latter case this Court comments upon a similar contention: "No one testified that he saw the sparks fall from the engine upon the right of way. It is rarely that this can be shown by eye-witnesses, for it would be put out by the observer. But here the fire was seen on the right of way, it burnt along the track between the ditch and the ends of the ties, and thence had gone into the woods. The wind was blowing from the northwest across the track, the fire being on the south side. Two witnesses testified that they first saw the smoke about thirty minutes after the defendant's engine passed. How long before that the fire began, no one knew, but there was no fire before the engine passed. The other witnesses first saw the fire after a longer interval, and there was evidence the fire burnt both ways. These were matters for the jury." The evidence offered in the present case tends to fix the origin of the fire upon the defendant's engine by exclusion of every other known cause. There was no fire before the defendant's engine began shifting cars on the track; there was no fire about the kiln or within 156 feet, more than twice the distance of defendant's engine; that smoke from the engine entirely enveloped the kiln; the only opening in the kiln was the ventilator—the place at which, or near which, the fire was discovered; it was impossible for the fire to have originated from the steam pipes; the wind was blowing the smoke from plaintiff's boiler away from the kiln, and was blowing the dense smoke from defendant's engine on the kiln, until it was enveloped.

We think the evidence ought to have been submitted to the jury, as the triers of the fact, to determine the primal fact, if the defendant's engine was the cause of the fire. As the evidence tended to prove this fact, we must, for the purposes of this motion, assume that this fact was established, and that the jury would have so found.

In considering the *origin* of the fire, it is immaterial whether the fire caught on or off the right of way. The place of ignition is important on the second question.

The second question presented is, Could the jury find from this primal fact that the plaintiff's property was negligently burned by the defendant? In 2 Sher. and Redf. on Negligence, sec. 676, the learned authors say: "The decided weight of authority and of reason is in favor of holding that, the origin of the fire being fixed upon the railroad company, it is presumptively chargeable with negligence, and must assume the burden of proving that it had used all those precautions for confining sparks or cinders (as the case may be) which have already been mentioned as necessary. This is the common law of England,

and the same rule has been followed in New York, Maryland, North Carolina, South Carolina, Illinois, Wisconsin, Missouri, Nebraska and Texas." *Ellis v. R. R.,* 24 N. C., 138; *Mfg. Co. v. R. R.,* 122 N. C., 881; *Hosiery Co. v. R. R.,* 131 N. C., 238; *Lumber Co. v. R. R.,* 143 N. C., 324.

If the defendant can show at the trial that it "had used all those precautions for confining sparks or cinders" which are approved and in general use, and the jury shall so find the fact, the trial judge will instruct them to answer the issue of negligence "No," provided the precautions were used by a competent and skilled engineer, in a careful way. Rule 1 in *Williams v. R. R.,* 140 N. C., 623; *Knott v. R. R.,* 142 N. C., 238.

In this case, we assume the kilns were not on the right of way of defendant, and it would seem that the case falls under Rule 1 of the summary of the rules of negligence, stated with such clearness by the *Chief Justice* in *Williams v. R. R.,* 140 N. C., 623. We, therefore, think his Honor erred in sustaining the motion to nonsuit, and this judgment is reversed and there will be a

New trial.