JOHN MOORE AND WIFE v. THE ROWLAND LUMBER COMPANY.

(Filed 13 March, 1918.)

1. **Railroads — Lumber Roads — Fires — Negligence—Evidence—Nonsuit— Trials.**

    Upon motion as of nonsuit upon the evidence in an action against a lumber company operating a steam railroad, to recover damages to land alleged to have been caused by fire negligently set out by the defendant's locomotive, evidence that the defendant operated its road for handling logs on its right of way, that the right of way was in a foul and inflammable condition and the fire was seen burning thereon and into the crossties; that it spread therefrom to the plaintiff's lands, causing the damages complained of, and that the defendant's locomotive had passed the place about two hours prior to the time the fire was discovered, is *Held* sufficient to take the case to the jury upon the question of whether the fire was negligently set out by the defendant's locomotive in its foul right of way.

2. **Appeal and Error—Evidence—Harmless Error.**

    Upon a motion to nonsuit, the erroneous admission of evidence will not constitute reversible error when there is other evidence in the case that would render it immaterial or harmless.

CIVIL ACTION, tried before *Stacy, J.,* and a jury at January Term, 1918, of DUPLIN.

The plaintiffs brought this action for the purpose of recovering damages for the burning of timber, and other property on their land, which they allege was caused by the defendant's negligence in permitting live sparks or cinders to escape from its engine. Defendant moved, at the

close of the testimony, that the action be dismissed for want of proof, and we, therefore, set out so much of the evidence as pertains to that question.

John Moore testified: "The fire that burned a part of this land ·occurred on June 24, 1914. I had the burned area surveyed by L. Middleton; 17 acres. It is a part of the 137-acre tract; it adjoins L. M. Cooper on the east side. I am familiar with the Cooper tract. The defendant built a spur track across the Cooper tract, extending in a north and south direction; a space was cut out about 20 or 25 feet on which to build this spur track, somewhere near 25 feet; I never did measure it; the right of way was cut out about 25 feet; the defendant went out there to cut the timber off; cut off the stumps and laid the track, put down the cross-ties and laid the rails on them. The right of way had not been burned or raked off; it was in a foul condition, having litter, grass, and straw where the fire originated on Mr. L. M. Cooper's land. I first heard of the fire at my home about three o'clock in the afternoon, and I went over there right away. The woods were ·on fire when I got there, and burning right over on the west side of the right of way, towards my land; in some places it was burned between the cross-ties, and in some places burning in the cross-ties. The defendant was hauling timber across this spur track. The weather was pretty dry at that time. My timber that was burned was mostly long-leaf, round timber, never been boxed; the fire got over on my land from Mr. Cooper's land. It burned across the end of Mr. Cooper's land on to my land that lies immediately west of it. . . . I didn't go far enough to see where the fire was burning when I first got there; it was burning all along the railroad, on the island and in the marsh next to the railroad, ·or pond, I call it, and on the outside of the branch, not in it."

Thomas McGowan testified: "I know where the Cooper land is. I . remember when this fire got out; one day after dinner before I had got out to work. I went on the front porch and saw a smoke. I got the hands, and one man went with me to the fire; when I got there it was burning on both sides of the tramroad, and some of the ties were burned; it was burning on the L. M. Cooper land. I then turned and went back home. We were sitting at the dinner table when we heard the train blow; I don't know where it was when it blowed; I heard one blow. I won't say that the defendant was using the track this day, I hadn't seen them. The defendant put the track down there to haul timber. I have seen the defendant using that track and hauling logs; a short time before the fire I saw the engine hauling logs. I don't know whose land they got the logs from that they were hauling· over this spur track; I won't say they were using it daily. I heard trains running there practically every day. I heard it blow every day, I reckon. I have

been on the premises several times since the fire. I saw the burn. The woods are burned on both sides of the track there a good long ways; I went to see and the fire burned across L. M. Cooper's onto mine and Mr. Moore's, too; that was the same fire. When I heard the train blow I did not take any notice of the direction."

L. M. Cooper testified: "A week or more after the fire I went out there and looked at the burned area in the marsh; it had burned a little on both sides of the tramroad, on the east side was not burned much. On the west side the further it got from the railroad the wider it got; it was burned on both sides of the railroad up to the cross-ties, and at the ends the burned place was very narrow at the tramroad; I suppose 50 or 75 yards. The fire occurred in June, 1914. I did not see the smoke."

W. B. Murray testified: "My land, the plaintiffs', and Cooper's join. The train of the defendant was out there that day. I heard it; I may have seen it; something like the middle of the day; I remember very well hearing the train, might have seen it. I know it was there; they were hauling logs off of my land across this spur track. Don't know how many loads they had made that day. I think it was as much as 12 or 1 o'clock when I left the woods; the train was running; carrying logs across. There was a branch they were speaking of this old mill being on, between my land and Cooper's. The reason I know the train was in there I heard it going. I saw it; I remember the cars with logs on them, and its hard pull. I noticed the engine because it pulled like it was heavily loaded; it exhausted like any other engine with a train that is heavily loaded; that is why I noticed it."

C. D. Haddock testified: "On 24 June, 1914, I was working on the W. B. Murray land; the man who has just been on the stand. Was working for T. H. Garrity, who is employed by the defendant. ·I remember the fire on that day. I recall the engine and train going out of that switch through Mr. Cooper's land that morning about 11 o'clock. I went to the fire; when I got there, it was on Mr. Cooper's land; when I got there the fire was burning in the middle of the railroad and on both sides; it had burned some 50 or 75 yards from the track and over a hundred yards up and down the track; it was burning on both sides of the track and in the woods towards the outer edge of the Cooper tract. I ate dinner that day on the Murray land between a half and three quarters of a mile from the point where I afterwards saw the fire. It was in a northeasterly direction from me, and towards the camp. I don't know where Mr. Garrity was. I saw Mr. Garrity going towards the loading machine a while before he came after me to go to the fire. I suppose this was half past twelve or one o'clock when he told me to get the hands and go down to the fire; about a half an hour after I had eaten dinner. It was about one o'clock when Mr. Garrity came by for

me. The train had passed that point about 11 o'clock, and this was two hours after the train passed."

There was testimony as to damages and as to some other matters not pertinent to the motion for a nonsuit.

The jury returned a verdict in favor of the plaintiff and from the judgment thereon the defendant appealed.

*Gavin & Wallace for plaintiffs.*
*Stevens & Beasley for defendant.*

WALKER, J., after stating the case: It is well settled that, upon a motion for a nonsuit, under the statute, the evidence must receive that construction which is most favorable to the plaintiff (*Finch v. Dewey,* at this Term), and so considered, we think that there was at least some evidence to establish the defendant's liability. Questions strikingly like this one have so often been considered by this Court that it would be useless, and certainly furnish no valuable precedent, if we should again review our previous discussions of them.

The allegation of the plaintiffs is that the fire orignated on L. M. Cooper's land, and burned his timber, and then extended to his land with the same result. This. the defendant denies, and contends that there is no evidence as to where the fire started, and certainly none to th effect that it was caused by its engine or begun on its right of way. We are of the opinion that there is some evidence that the fire was caused by sparks from the defendant's engine which fell on its right of way, which was foul, and ignited combustible material there, and that it extended from there across the Cooper land to the plaintiffs' premises, where it destroyed the timber and caused the damage complained of. It seems to us, without a close analysis of all the evidence, that the testimony of the plaintiff himself is sufficient, as against the motion for a nonsuit, to carry the case to the jury. He testified: "The right of way had not been burned or raked off; it was in a foul condition, having litter, grass, and straw where the fire originated on Mr. L. M. Cooper's land. I first heard of the fire at my home about 3 o'clock in the afternoon, and I went over there right away. The woods were on fire when I got there and burning right over on the west side of the right of way towards my land. In some places it was burned between cross-ties, and in some places burning in the cross-ties. The defendant was hauling timber across the spur-track, and the weather was very dry at the time." This was, at least, sufficient for a fair inference by the jury that the fire was caused by defendant's engine dropping live cinders and sparks on its foul right of way. If we confine ourselves to such evidence as favors the plaintiff, there was no apparent cause

for the fire except the defendant's engine. There was other evidence, which strengthened the plaintiffs' case, and while the jury were not bound to find that the fire was caused by the engine, or that it was started on the foul right of way by sparks or hot coals from the engine, there is ample evidence in the record to warrant such a finding.

We cannot do better than quote what is said in the recent case of *Simmons v. Roper Lumber Co.,* 174 N. C., 220 (93 S. E. Rep., 736, 738), as the two cases are very much alike, and if there is any difference between them the evidence in this case is much stronger for the plaintiffs than was the evidence in *Simmons v. Roper Lumber Co.* for the plaintiff who sued there. We said in the *Simmons case:* "The cause of the fire is not required to be shown by direct and positive proof, or by the testimony of an eye-witness. It may, as we have seen, be inferred from circumstances, and there are many facts like this one which cannot be established in any other way. It is true that there must be a casual connection between the fire and its supposed origin, but this may be shown by reasonable inference from the admitted or known facts; for otherwise presumptive evidence would be excluded. We have held proof as to the emission of sparks from locomotives or stationary engines to be sufficient for the purpose of showing that a fire was started by them where no one saw the sparks dropping on the place which was burned, and for the reason that the surrounding circumstances tended to prove that they were the cause of the fire, by reasonable presumption or inference. We have cited several such cases, and it would be useless to mention others. This is rather a typical case of that class, and the facts tend to show the true cause of the fire with more certainty than in many of them where the owner of the engine was held liable for a negligent burning. There were fires on both sides of the tramroad. One of the witnesses stated that 'The fire came from towards the tram and was burning within a few feet of the train, which was operating on the tram. The loader, I think, was on the line, which was operated by a steam engine. I was near enough to see that they were trying to stop the fire.' He also testified that the right of way was covered at places with dry grass and pine straw, logs, and other inflammable material, and that the first fire seen by him was 'in the region near the southwest swamp, and on the right of way.' This evidence is not merely conjectural or speculative, but is such as warranted the jury in forming a reasonably safe conclusion that the fire was set out by the engines; there being, in addition to all this proof, the fact that there was nothing else there to cause the fire," citing *McMillan v. R. R.,* 126 N. C., 725; *Williams v. R. R.,* 140 N. C., 623.

In *Ashford v. Pittman,* 160 N. C., 45, at p. 47, the Court holds that circumstantial evidence is sufficient to show the origin of the fire, and

14—175

that it does not require the testimony of an eye-witness for the purpose, and the same was decided in *Williams v. R. R., supra,* where it was said with reference to facts quite similar to those in this case: "No one testified that he saw the sparks fall from the engine upon the right of way. It is rarely that this can be shown by eye-witnesses, for it would be put out by the observer. But here the fire was seen on the right of way; it burned along the track between the ditch and the ends of the ties, and thence had gone into the woods. The wind was blowing from the southwest across the track, the fire being on the south side. Two witnesses testified that they first saw the smoke about 30 minutes after the defendant's engine passed. How long before that the fire began no one knew; but there was no fire before the engine passed. The other witnesses first saw the fire after a longer interval, and there was evidence that the fire burned both ways. These were matters for the jury. . . . In considering the origin of the fire, it is immaterial whether the fire caught on or off the right of way."

So in *Deppe v. R. R.,* 152 N. C., 79, *Justice Manning* comments upon the necessity of permitting the cause of the fire to be shown by circumstantial evidence, as being the only kind of proof available to establish the fact, especially if the fire started in the daytime when sparks can rarely be seen.

And in *McRainey v. R. R.,* 168 N. C., 572, *Justice Allen* makes similar observations concerning the sufficiency of circumstantial testimony in such cases, the question there being "whether there was any evidence that the fire, of which the plaintiff complains, originated from the defendant's engine and passed to his land causing him damage," citing *Fitzgerald v. R. R.,* 141 N. C., 535; *Henderson v. R. R.,* 159 N. C., 583; and *Hardy v. Lumber Co.,* 160 N. C., 116.

Several of the cases we have mentioned were decided upon facts substantially like those in this record, except that in this case we also have some direct evidence of the fact sought to be established. We think, though, that the case of *Simmons v. Roper Lumber Co., supra,* fully answers the defendant's contention upon his motion to nonsuit, and that it is, in its turn, sustained by ample authority. Of course the evidence should have proper relation with the fact to be proved, and reasonably tend to show the fact. Sherman & Redfield on Negligence, sec. 58. It must not be conjectural or give rise only to a mere guess, or speculation, as to what was the cause of the fire. *Byrd v. Express Co.,* 139 N. C., 273, as this is not a sufficient basis for an inference by the jury as to the controverted fact.

The exceptions as to evidence are without merit. Even if there was any error in the rulings, which is not conceded, it was harmless. There

was sufficient evidence for the jury, not considering that which is the subject of the four exceptions.

We conclude that the case has been decided upon its clear legal merits in favor of the plaintiffs, and there is no ground for a reversal.

No error.

ALLEN, J., did not sit on the hearing of this case.