MRS. J. A. ROYAL ET ALS. v. L. N. DODD, P. F. POPE, AND W. H. PARRISH, TRADING AS POPE & PARRISH, BEN PARRISH AND J. D. POPE (CONSOLIDATED CASES.)

(Filed 19 March, 1919.)

### 1. Negligence—Evidence—Fires—Damages—Deeds and Conveyances.

A., the owner of lands, conveyed the standing timber thereon to B., who conveyed it to C., and the latter contracted with D. to cut or manufacture the same on the premises, and while so doing D. set fire to the lands of A. and adjoining owners, who brought their action against B., C., and D. for the resultant damages: *Held,* as between the parties, it was not required that the deed from B. should have been registered before the fire occurred, and though registered during the trial it was competent as evidence of a registered instrument, and if established passed the title to the timber and relieved B. from liability in the action.

### 2. Contracts—Partnerships—Evidence.

A contract to cut or manufacture lumber between A., the owner of the timber, and B., that the latter should cut the timber at a certain price per thousand, stack the product separately at the mill, convenient for handling, etc., the former to take shingles as manufactured, and thereon advance money for the expenses of manufacture, with settlement each month for the previous month, the owner to have the cull grade of shingles, with equal division of the tar after expenses paid, does not create a partnership between the parties, so as to make the owner of the timber liable to third persons for damages caused to their lands by fire negligently set out by B. while performing his agreement.

### 3. Contracts—Independent Contractor—Negligence—Liability of Principal—Principal and Agent.

An owner of trees standing upon lands may not relieve himself from liability to the owner of the lands and adjoining owners, under the doctrine of independent contractor, for damages by fire set out by his contractor in cutting or manufacturing the timber thereon with a stationary engine having a defective smokestack or spark arrester, and throwing sparks upon combustible matter surrounding it, showing negligent construction of the engine and in the manner of operating it.

### 4. Appeal and Error—Objections and Exceptions—Instructions—Evidence.

While ordinarily a mistake of the trial judge in endeavoring to rehearse the testimony, or give the evidence of a witness, or the admission of the

ROYAL *v.* DODD.

parties, should be called to his attention at the time to afford him timely opportunity to correct it, or it will not be reviewed on appeal, a misstatement that there is no evidence as to a material and controlling question in controversy does not fall within the rule, and will be held for reversible error.

**5. Negligence—Fires—Stationary Engines—Evidence—Prima Facie Case.**

Where there is evidence tending to show that soon after defendant commenced cutting or manufacturing timber on the plaintiff's land with a stationary steam engine equipped with a ten-foot smokestack, fire was set out upon inflammable surroundings and communicated to plaintiff's lands to his damage, a *prima facie* case of negligence is made out against the defendant, affording evidence that the engine was not equipped with a proper spark arrester.

**6. Instructions— Expression of Opinion— Evidence — Fires — Negligence—Stationary Engines—Defects.**

Where there is evidence that the plaintiff's lands were set fire to and damaged by the actionable negligence of the defendant in operating a stationary steam engine thereon not properly equipped with a spark arrester, it is error to the plaintiff's prejudice for the trial judge, in reference to plaintiff's contention to the contrary, to state to the jury that he recollected no evidence as to the spark arrester, and his further remark that they could consider any other defects about the machinery, signified that there was no evidence to support the plaintiff's contention as to the spark arrester, and is reversible error.

THESE were four several actions against the same defendants consolidated without objection, so far as appears, and tried before *Allen, J.,* and a jury, at August Term, 1918, of SAMPSON.

The actions were by several adjoining proprietors of land to recover damages caused to their lands by fire wrongfully started, as they allege, by defendants or their agents in operating a steam sawmill on the tract of one of the plaintiffs, J. C. Jones, and under a contract at the time between L. N. Dodd, owner and operator of the mill, and defendant J. D. Pope, the owner of the timber.

On denial of liability and issues submitted the jury rendered the following verdict:

1. Are the respective plaintiffs the owners of the lands set out in their respective complaints? Answer: "Yes."

2. Did defendants negligently set fire and burn the lands of the plaintiffs, as alleged, and if so, which defendants? Answer: "No."

Judgment on the verdict for defendants, and plaintiffs having excepted appealed.

*I. C. Wright for plaintiff.*
*Butler & Herring for defendant.*

HOKE, J.  On the hearing it was made to appear that the defendants P. F. Pope and W. H. Parrish, a partnership trading as Pope & Parrish,

owned the timber, with the right to cut and remove same, on the lands of J. C. Jones, one of plaintiffs, sometimes designated as the Smith, or Jim Smith, place, and in November, 1915, they sold and conveyed the said timber and all their rights and appurtenances in reference thereto to their codefendant J. D. Pope, who continued to own same to the time of trial.

The deed, executed in November, 1915, and duly proved and filed with the register during the trial week, was allowed in evidence by his Honor, and plaintiff excepted. That on 27 January, 1916, the defendant J. D. Pope, then owner of the timber, contracted with L. N. Dodd, who owned and operated a steam sawmill, to cut the timber on the said tract of land, the agreement being in terms as follows: "This indenture, made this the 27th day of January, 1916, by and between L. N. Dodd and J. D. Pope, of Harnett County. L. N. Dodd agrees to cut all of the long-leaf timber on the Smith tract of land for $1.50 per thousand and stack each grade separately at mill, convenient for hauling, said timber to be cut clean as he comes to it, down to the ten-inch stumpage. J. D. Pope agrees on his part to take said shingles at the mill and advance enough every two weeks to meet the expenses of manufacturing said shingles and at the end of each month to settle in full for all cut the previous month. It is also agreed between the two parties that L. N. Dodd shall have all the cull grade of shingles, and that the tar is to be divided after all the expenses are paid, equally."

That pursuant to the agreement said Dodd, on 14 March, 1916, having duly placed his mill and engine, commenced to cut the timber into shingles, and a few hours thereafter the fire caught near the mill, burned over the lands of J. C. Jones, where the mill was situated, and the lands of the other plaintiffs, adjoining proprietors, doing substantial and extended damage to all of said tracts.

There was testimony on the part of plaintiffs tending to show that the mill had a smokestack, defective in structure, and that it threw sparks and live coals to a degree that was a menace, and there was pine straw, wiregrass and leaves lying around the mill which had not been cleaned away and where the fire caught, and that the man in charge had been warned by one of plaintiffs not to fire his engine till he cleaned up the straw, leaves and litter around the mill, and that the owner (Dodd) was heard to say after the fire that "the place where he missed it was not in raking off around the mill." There was evidence on the part of defendant in contradiction to that of plaintiff and to the effect, also, that the damage done to the land was not near so extensive as plaintiffs claimed, and that some of the land was not injured at all. Further, that, before contracting with him, J. D. Pope had made inquiry about L. N. Dodd and had been informed that he was a capable and reliable sawmill man.

On these facts, relevant and sufficiently full for a proper apprehension of the questions presented, we concur in his Honor's view that in no aspect of the evidence is a recovery permissible against the partnership of Pope & Parrish, they having conveyed the timber several months before by deed absolute in terms and retaining no interest whatever either in the timber or its manufacture. For the purpose presented, the deed, properly established, was sufficient to pass the title without registration, and the deed having been duly proved and filed for registration with the proper officer we see no reason why, on the facts of this record and as between the parties, the deed should not be received in evidence as a registered instrument. *Smith v. Lumber Co.,* 144 N. C., 47.

We approve also his Honor's ruling that, under the contract presented, there was no partnership created between L. N. Dodd and J. D. Pope in reference to the manufacture of this timber within any definition of partnership recognized by our decisions. *Gorham v. Cotton,* 174 N. C., 727, and authorities cited. The instrument shows that, so far as the shingles were concerned, the mill man was engaged in sawing the timber into shingles for J. D. Pope, the owner, at so much per thousand.

It was further objected by plaintiff that his Honor left it to the jury to determine whether, under the contract between them and the attendant facts, the conditions were so menacing as to deprive defendant J. D. Pope of any defenses which might arise from the fact that L. N. Dodd was at the time an independent contractor. If this relationship be conceded, the exception is hardly presented on the record, for the jury have, in their verdict, declared that neither Dodd nor Pope is liable, but as it will no doubt come up on a second trial we deem it well to make some further reference to the matter.

In *Thomas v. Lumber Co.,* 153 N. C., 352, it was held that a company operating a steam railroad for logging purposes is liable in damages for fires caused by its locomotives by reason of its foul right of way; so dangerous that it might reasonably have been anticipated that injury would thereby occur to adjacent owners, and the principle of independent contractor will not avail the employer in such instances; and again, the operation of a defectively equipped engine or of a good engine not carefully managed, or managed by an unskillful engineer, is such source of danger to the adjacent landowners from fire that an employer cannot relieve himself of the consequent damage under a contract with an independent contractor.

This decision has been cited and approved by us in *Strickland v. Lumber Co.,* 171 N. C., 755, and many other cases, and in his learned and well-considered opinion *Associate Justice Manning,* speaking further to fires caused by a defective engine, said: "We will now consider the view based upon a finding that the fire was caused by a spark emitted by a

14—177

defectively equipped engine, but not communicated from the right of way. Would the defendant be liable? If the defendant itself had been at the time operating the engine its liability is governed by the third rule formulated in *Williams v. R. R.,* 140 N. C., 623, as follows: '3. If fire escapes from a defective engine or defective spark arrester, or from a good engine not operated in a careful way or not by a skillful engineer, and the fire catches off the right of way, the defendant is liable.' The liability of the employer rests upon the ground that mischievous consequences will arise from the work to be done unless precautionary measures are adopted, and the duty to see that those precautionary measures are adopted rests upon the employer, and he cannot escape liability by entrusting this duty to another, though he be employed as an 'independent contractor' to perform it."

In *Covington, etc., Bridge Co. v. Steinbrock,* 64· Ohio St., 215, the principle is thus stated: "The weight of reason and authority is to the effect that where a party is under duty to the public or a third person to see that work he is about to do, or have done, is carefully performed so as to avoid injury to others, he cannot, by letting it to a contractor, avoid his liability in case it is negligently done to the injury of another (citing numerous authorities). The duty need not be imposed by statute, though such is frequently the case. If it be a duty imposed by law the principle is the same as if required by statute. *Cockburn, C. J.,* in *Bower v. Peate, supra.* It arises at law in all cases where more or less danger to others is necessarily incident to the performance of the work let to contract. It is the danger to others incident to the performance of the work let to contract that raises the duty and which the employer cannot shift from himself to another so as to avoid liability should injury result to another from negligence in doing the work. It cannot be denied that the operation of a defectively equipped engine, or the operation of a good engine not carefully managed or managed by an unskillful engineer, is a source of great danger to property adjacent to the road on which such an engine is operated. Such danger raises the duty which the employer cannot shift from himself to another."

It will be noted that the engine referred to in *Thomas v. Lumber Co.* was a locomotive on a privately owned logging road, and while the principle is probably more insistent on an engine of that character, owing in part to its extended range of action and the greater variety of threatening conditions that are likely to arise, we are well assured that it should be applied also to a case like the present where one owning the timber on another's land contracts with the owner of a steam sawmill to cut the timber with an engine of this kind, always requiring a heavy draft for its successful use; in this instance, having a smokestack not over ten feet high and operated under conditions importing serious menace unless

proper precautions were taken. Helpful cases in illustration of the general principle will be found in *Davis v. Summerfield,* 133 N. C., 325; *Jacobs v. Fuller & Hutsonpiller,* 67 Ohio St., 70, reported in 65 L. R. A., with a full and learned note on the subject; *Thompson v. Lowell, etc., Ry.,* 170 Mass., 577; *Dillon v. Hunt,* 105 Mo., 154; *Bower v. Peate,* 1 L. R., Q. Bench Div., 1873-76, 321; *Hardaker v. Idle Dis. Council,* L. R., Q. B. D., 1896, 335; *Penny v. Welbedon, etc., District,* L. R., Q. B. D., 1899, 72; and *Aman v. Lumber Co.,* 160 N. C., 369, and *Lawton v. Giles,* 90 N. C., 375, are well-considered decisions in our own Court giving support to the position that, in reference to the principle and its proper application, there should be no distinction between locomotive and stationary engines generating and operated by steam, and more peremptorily so when they are defective and used or likely to be used under conditions, as stated, importing menace of substantial injury.

As heretofore stated, the jury having negatived liability on the part of Dodd or J. D. Pope, the results of the trial should not be disturbed by reason of this exception, but we are of opinion that the plaintiff is entitled to have the issues submitted to another jury by reason of another objection to a portion of his Honor's charge, in terms as follows:

"Now the negligence in this case relied upon, as I understand it, is by allowing grass and combustible matter to be near and around the engine that was being used for cutting shingles, and the plaintiffs also contend that there is evidence tending to show that there were defects about the machinery. There were defects about it which caused the sparks to be emitted that set out the fire. (They allege that there was no spark arrester on the mill, but there is no evidence one way or another about that as I recollect it.")

To that part of the charge is parentheses, plaintiffs in apt time excepted.

("As to other evidence about defects in the machinery, I believe there was some evidence of a short smokestack, as contended for by the plaintiffs, and there may be some other evidence which I do not now recall, and if there is you will consider all of the evidence and say whether or not the defendants, or any of them, were negligent with reference to the defective machinery or in permitting any combustible matter to remain there with reference to the fire. And if you find that this combustible matter was allowed to remain there, and that was the cause of the fire, you will answer the issue 'Yes.' ")

To the above charge in parentheses, plaintiffs in apt time excepted.

It is well understood with us, both by general rule and precedent, that when a judge presiding at the trial of a cause is endeavoring to rehearse the testimony or to give the evidence of a witness or the admissions of the parties and makes a mistake about it, unless called to his attention

at the time, this may not be made the subject of a valid exception on appeal. *S. v. Lance,* 149 N. C., 551. But taking this portion of the charge and the exceptions noted thereto as a whole, the statement "that there was no evidence one way or another as to the absence of a spark arrester," being as it is in direct answer to an opposing position evidently taken and urged by the counsel for plaintiff and followed immediately by the instruction "that as to other defects about the machinery" the jury would consider the facts and say whether the machinery was defective, could by correct interpretation only have the significance, and be so understood, that the position taken by plaintiff had no evidence to support it. The court evidently had the testimony relevant to the question well in mind and gave to the jury a clear charge making full reference to it, and his ruling, therefore, in direct denial of plaintiff's position was one on the full and legal effect of the testimony and presents a question of law or legal inference properly reviewable on appeal.

This being, to our mind, the true concept of the record, it has been held in numerous cases that when a fire causing damage of this kind is shown to have been started by a spark or sparker from a defendant's engine, locomotive or stationary, a *prima facie* case is made that calls for satisfactory explanation and requiring that the cause be submitted to the jury on the issue of defendant's negligence. *Boney v. R. R.,* 175 N. C., 355; *Simmons v. Roper Lumber Co.,* 174 N. C., 221; *McRainey v. R. R.,* 168 N. C., 570; *Williams v. R. R.,* 140 N. C., 623. And a perusal of many of the cases on the subject will disclose that this rule of proof bears with more directness on the absence or presence of a spark arrester or its defective condition. That is its more usual and natural significance. *Hardy v. Lumber Co.,* 160 N. C., 113; *Williams v. R. R.,* 140 N. C., 623; *Lawton v. Giles,* 90 N. C., 375; *Aycock v. R. R.,* 89 N. C., 321; *Anderson v. Steamboat Co.,* 64 N. C., 399; *Ellis v. R. R.,* 24 N. C., 138.

Not only were there facts in evidence tending to show that the fire originated from defendant's engine, breaking out within a few hours after defendant Dodd started the operation of his engine, and calling for an application of the principle approved in these and many other cases of like kind, but, speaking directly to the defendant's engine and its structure and condition, Raeford Smith, a witness for plaintiff, testified, among other things, and without objection noted, as follows: "I live near the Jones land; knew the mill. On 14 March, 1916, I was dipping turpentine about half a mile from the mill; heard the whistle, saw the smoke, and ran rapidly to the mill. The fire was burning from the mill with the wind, and eight or ten feet from the mill was burning back towards the boiler against the wind. The boiler had just been fired up that day. The mill had a short smokestack, about ten feet high, and

would throw out live sparks and hot coals of fire, for I was there loading some shingle blocks a few days after the fire and if you were not careful it would set your clothes on fire. The pine straw, wiregrass and leaves were lying around the mill on the ground and had not been raked up or burned off."

On this and other apposite testimony, and under the principles of the authorities cited, there was error in the ruling that there was no evidence as to the absence of a spark arrester, and we are of opinion that a general new trial should be ordered.

New trial.