L. A. BAILEY AND WIFE v. ATLANTIC COAST LINE RAILROAD CO.

(Filed 27 March, 1918.)

**Railroads—Fires—Negligence—Trials—Evidence—Questions for Jury.**
    In an action to recover damages against a railroad company for negligently setting out fire to the injury of plaintiff's lands, evidence is sufficient which tends to show that broomsedge and old crossties had been left·upon the right of way from which the fire started, which was seen there about 25 or 30 minutes after the train passed or after the witness had gone about half a mile from the place, etc., and that no other. fires were seen there.

ACTION tried before *Devin, J.,* and a jury at November Term, 1917, of COLUMBUS. Defendant appealed.

*McRackan & Greer, E. G. Brown, and S. Brown Shepherd for plaintiffs.*
    *Rountree & Davis and Schulken, Toon & Schulken for defendant.*

PER CURIAM: The action was brought to recover damages for the destruction by fire of the timber and other property of the plaintiffs. The only question raised was by the motion to nonsuit upon the evidence, defendant contending that there is no evidence that its engine set out the fire, or that its right of way was foul, or that any other act of negligence which caused the fire was imputable to it. It will be necessary to state so much of the evidence which is favorable to the plaintiff in regard to the origin of the fire.
    C. P. Brown testified: "On 14 April, 1916, I was at Ward's Station in the morning, and I rode from Ward's Station back home. I left Ward's Station near 12 o'clock, I don't know exactly what time; I was riding a bicycle; Ransom Blackwell was with me. I rode from Ward's Station along the side of the railroad track to Chadbourn. We met the noon train going towards Conway at the second curve, about a quarter of a mile below the second curve from the depot at Chadbourn. The second curve is about two miles or a· little over ·from the depot. As I rode up about fifty yards on the east side of the track fire started up in the broomsedge, about fifty yards north of the yard limits and was sweeping over. On the east side it was burning up to the track to the end of the cross-ties. The wind was blowing southeast. The wind was blowing southeast, northeast to southeast. I did not observe any fire burning on the opposite side, west side. I do not know where Mr. Bailey's or Mr. Jolly's land is. I just saw the fire. That was the riding path on the west side of the track, couldn't ride on the other because of old cross-ties piled up there and brush;

you couldn't ride on the east side at all; the cross-ties were rotten, and shattered off pieces of rotten cross-ties. The fire was burning on grass and all kinds of trash by the side of the track; right on the bank, it started out through the sedge. I was down there hunting some hogs. After I met the train, I did not stop anywhere; I kept coming, not riding very fast. I don't know exactly how long the train had passed the place where I saw the fire—I suppose between 25 and 30 minutes."

Ransom Blackwell testified: "I was with Pope Brown on 14 April, 1916. We went to Ward's Station to see about some hogs and came back about 12 o'clock and saw fire burning there on the east side of the railroad track, two pieces of old rotten cross-ties pulled out there and burning in the hedge on the east side. We were riding on the west side. The fire was not burning very big, it was burning off from the right of way; it was about four steps from the track. We met the train below the second curve, about half a mile, about two miles and a half from Chadbourn. We had come about a mile before we saw the fire. We passed the train before we saw the fire; it was intended for the 10:45 train, but it was behind time that day. We came right on from where we met the train until we saw the fire; the train was going to Conway from Chadbourn."

B. O. Edwards testified: "I saw fire that day about 12 o'clock, on the 14th; it was up in the direction of the railroad, on the east side; I saw it right about the time the train went down, right after." The court asked: "Where did you say you saw that fire?" Answer: "Right up the railroad, at least down the railroad, from where I was at work is where the fire caught. I did not see any fire about that railroad before that; I was plowing. After I saw it, it came right on down pretty much in the direction where I was working."

It would appear that the foregoing evidence is equally as strong, if not stronger, than that which we have held to be sufficient in recent fire burning cases. *Williams v. R. R.,* 140 N. C., 624; *McRainey v. R. R.,* 168 N. C., 570; *Moore v. R. R.,* 173 N. C., 311; *Simmons v. Lumber Co.,* 174 N. C., 220, and the very recent case (decided at this term) of *Moore v. Lumber Co.* If reference is made to those cases, especially to *Simmons v. Lumber Co., supra,* and *Moore v. Lumber Co., supra,* the reason for holding that such evidence is sufficient to support the verdict will be found to be stated very fully, and it is not necessary to reiterate them. The jury in this case might have fairly and reasonably inferred, and concluded, that the engine emitted the sparks or live coals which fell upon defendant's right of way, which was in a foul and inflammable condition, and started the fire which burned the plaintiff's property.

No error.