D. E. BONEY AND WIFE v. ATLANTIC COAST LINE RAILROAD CO.

(Filed 10 April, 1918.)

1. **Evidence—Nonsuit—Trials.**

Upon a motion to nonsuit, the evidence in support of plaintiff's claim must be accepted as true and construed in the light most favorable to him.

2. **Railroads—Fires—Negligence—Prima Facie Case.**

In an action to recover damages against a railroad company for negligently setting out fire to the damage of the plaintiff's land, evidence tending to show that the fire originated by sparks from defendant's locomotive, or that this is the more reasonable probability, makes out a prima facie case, requiring that the issue be submitted to the jury.

3. **Same—Evidence—Trials—Questions for Jury.**

In an action to recover against a railroad company for negligently setting out fire to the damage of plaintiff's land, evidence tending to show that a heavy freight train passed the place about midnight, throwing out sparks, with the wind blowing in the direction of plaintiff's land, that plaintiff's gin, etc., was discovered, with bales of cotton thereat, on fire within one-half to three-quarters of an hour thereafter, and theretofore it was as usual; that there was indication from the character of the burning that it had commenced at the railroad, is sufficient for the determination of the jury of the issue of defendant's actionable negligence. *Moore v. R. R.*, 173 N. C., 311, cited and distinguished.

4. **Actions—Parties—Fires—Railroads.**

The husband, the owner of the homestead in lands, and who had equipped a gin-house thereon with his own money, and the wife holding the title in remainder, may join in an action against a railroad company for negligently setting out fire from its passing locomotive to the damage of the land and injury of the property.

5. **Actions—Misjoinder—Demurrer—Answer—Waiver.**

Objection to misjoinder of plaintiffs in an action must be taken by demurrer, and is waived by an answer in general denial.

APPEAL by defendant from *Stacy, J.,* at August Term, 1917, of DUPLIN.

Civil action for "damages to real and personal property situate upon lands in the town of Wallace, N. C., claimed to be owned by D. E. Boney, subject to the rights of his wife and coplaintiff, who owned a remainder in the land after the homestead of D. E. Boney, plaintiff claiming that said property was destroyed by defendant by emitting sparks from one of its locomotives, and tried before his Honor *W. P. Stacy, Judge,* at August Term, 1917, of the Superior Court of Duplin County; that the property destroyed, situate on the lot held, as stated, was a gin-house and machinery therein, a shed under which were the weighing scales

and crates for seed cotton and a lot of loose cotton belonging to Boney and some of it to other persons, the evidence tending to show that the machinery had been bought and paid for by husband plaintiff, D. E. Boney.

A motion for nonsuit for lack of evidence that the fire originated with plaintiff was overruled. On denial of liability, the cause was submitted to a jury, who rendered a verdict as follows:

1. Were the plaintiffs the owners of the property described in the complaint and as alleged therein? Answer: "Yes."

2. Did the defendant negligently set fire to and burn the property of the plaintiffs as alleged in the complaint? Answer: "Yes."

3. If so, what damage, if any, are plaintiffs entitled to recover therefor? Answer: "$2,985.47."

Judgment on the verdict for plaintiffs, and defendant excepted and appealed, assigning for error chiefly the denial of their motion to nonsuit.

*George R. Ward, H. D. Williams, and A. D. Ward for plaintiffs.*
*Stevens & Beasley and Rountree & Davis for defendant.*

HOKE, J. It has been uniformly held with us that, in considering a motion to nonsuit, the evidence in support of plaintiff's claim must be accepted as true and construed in the light most favorable to him. *Edge v. R. R.,* 153 N. C., 212-220; *Cotton v. R. R.,* 149 N. C., 227; *Biles v. R. R.,* 139 N. C., 528; *Hopkins v. R. R.,* 131 N. C., 464. And it is also fully established that when it is shown that the fire which destroyed complainant's property originated by sparks from defendant's locomotive, or there is proof offered which makes this the more reasonable probability, a prima facie case is made out which requires that the issue be submitted to the jury. *Simmons v. Roper Lumber Co.,* 174 N. C., 221; *McRainey v. R. R.,* 168 N. C., 570; *Aman v. Lumber Co.,* 160 N. C., 370; *Currie v. R. R.,* 156 N. C., 419; *Williams v. R. R.,* 140 N. C., 623.

In *McRainey v. R. R., Associate Justice Allen,* for the Court, said: "In actions against railroad companies to recover damages caused by fire, the plaintiff makes out a prima facie case which entitles him to have an issue of negligence submitted to the jury upon offering evidence tending to prove that the fire which caused him damage originated from an engine of the defendant."

And in *Aman v. Lumber Co., Associate Justice Walker,* delivering the opinion, said: "Where the act of negligence is charged to be a defective engine, it can make no material difference whether the spark lights within or without the right of way," and quotes with approval from

Sherman and Redfield on Negligence as follows: "The decided weight of authority and of reason is in favor of holding that the origin of the fire being fixed upon the railroad company, it is presumptively chargeable with negligence, and must assume the burden of proving that it had used all of those precautions for confining sparks or cinders (as the case may be) which have already been mentioned as necessary."

.   Considering the record in recognition of these accepted principles, there are facts in evidence on the part of plaintiffs tending to show that on the night of 7 February, 1915, plaintiffs were the owners of a lot in the town of Wallace, the husband, D. E. Boney, having a homestead in the same and his wife owning the remainder; that the same abutted on the right of way of the defendant railroad, which was at that time 65 feet on each side of the road; that about 65 feet, or 130 feet from the center of the track, there was a gin-house on said lot with usual machinery therein, the house having been built by the husband plaintiff and the machinery bought and paid for by him; that near the right of way and in part between the gin-house and the railroad right of way was a shed under which was placed the weighing scales and the crates for ginned cotton, etc., and between the shed and the railroad right of way and extending to it was a lot of cotton in bales on the ground west and south of the shed and more cotton on the north of the lot also extending to the right of way.

There was also on the south side of said lot a boiler room some 65 feet from the gin-house and 45 feet from the right of way, with a .ditch between the boiler house and the gin and also between the boiler house and the shed which was about the same distance off; that on the night in question about 12 o'clock, a good sized freight train of defendant company passed Wallace going south; that the engine was emitting a lot of sparks and cinders, with the wind blowing from the railroad towards the property, and not long after said train had passed, within one-half to three-quarters of an hour, a fire was discovered burning the baled cotton, the shed and crates, and burned the gin-house and machinery and a lot of cotton, etc. One witness said he had passed by the gin going towards the train that night·and which he met a little further north, and that he saw nothing unusual at the gin-house as he passed, no excitement of any kind. There was evidence further to the effect that the cotton lying on or near the sidewalk and nearest to the right of way was the worse burned. Quite a lot of that lying to the north of the gin-house was saved. ' R. M. Turner, a witness for the plaintiff, testified that he lived about a hundred yards from the gin-house and when he got there about a quarter to one, it looked like everything was on fire; that he did not know just where it was burning when he first got there; the cotton next to sidewalk had singed and burned black and that on the south side was.

burning and the gin-house was on fire. When he got there the fire was burning mostly on the front and south sides. "When I first got there it had caught on the top of the gin-house." In other words, the gin-house had just caught when witness first saw it; it had not gone far to the gin-house; it was burning good fashion at the scale house; those crates were burning; they were under the shed on the south side of the gin-house and some of the crates were under the shed. There was a stiff breeze from the northwest and to the southeast, and it was dry weather.

On the question as to the engine of that train and emitting sparks on the night in question, Isaiah Teachy, who saw the train just north of Wallace, said it was a long freight train and throwed out sparks. J. O. Ward testified that he lived just back of the gin-house; was up when he heard the train coming; that it was making an awful pumping and that he looked out from his window and saw the train and there was a volume of fire coming out of the smokestack. This was about 12 o'clock. This witness also testified that when he got to the fire there was not much fire between the cotton gin and the scale house; the cotton next the street was burning; the hoops were hot and the sacking on cotton had burned down (This sidewalk was on or near the railroad right of way). L. W. Sellars, who passed the train at a point near the gin: "In passing the train that night, I saw it emitting sparks and smoke; it was unusual and there was too much light, etc."

James Powers testified: "That he saw the train that night north of Wallace; that it was throwing a lot of sparks and he pulled his hat down to keep them out of his eyes; it was throwing some awful sparks."

Miss Ruby Foy and Mrs. Henderson testified to the same effect: "That the train passed going south about 12 m.; that they could see big sparks flying and falling out." The owner also testified: "That he was always careful to lock up his gin or to see that it was done, and there was no fire to amount to anything when he left that night."

There were facts in evidence tending to exculpate defendant, but from this testimony in support of plaintiff's position, showing that the direction of the wind was from the train towards the property, the unusual character and extent of the lighted sparks thrown from this engine as it passed through Wallace; from the time and course and probable commencement of the fire, it would seem not only the reasonable but well nigh the necessary inference that it was caused by sparks emitted from the engine, and this being true, his Honor correctly ruled that the issue should be submitted to the jury, and, on the facts as accepted by them, many well-considered cases with us are in support of plaintiff's recovery. *Moore v. Lumber Co.*, at present term; *Bailey v. R. R.*, at present term; *Simmons v. Lumber Co., supra; Deppe v. R. R.,* 152 N. C., 79; *Manufacturing Co. v. R. R.*, 122 N. C., 881.

In the case of *Moore v. R. R.*, 173 N. C., 311, cited and very much relied on by defendants, there was no evidence offered that sparks were thrown from the engine or that the same was in any way defective and both in the principal and concurring opinions this was noted and referred to as one of the principal grounds of decision.

In regard to defendant's position as to misjoinder of parties and causes of action, it is very generally held that, when property is wrongfully destroyed by a single fire, of same defendant, all persons having an interest in the same property may, as a rule, join in a suit for recovery and a life-tenant and remainderman may join where both interests are injuriously affected. *McIntire v. Coal Co.*, 118 Pa. St., 108; *Ashbey v. R. R.*, 5 Metcalf, 368; 15 Enc. Pl. and Pr., 543.

And even if there was a misjoinder of causes of action as to the personal property owned by the husband and the realty owned by him and his wife, it must be taken advantage of by demurrer and is waived by an answer in general denial by defendant, as in this instance. *Teague v. Collins*, 134 N. C., 62.

In all the cases cited by defendant the objection is presented by demurrer formally entered.

There is no error, and judgment in plaintiff's favor must be affirmed.
No error.