STACY, C. J., dissents.
Certain actions pending in the Superior Court of Craven County against Norfolk Southern Railroad Company and James K. Daugherty, instituted by N. F. Dickerson and others, owners of a pack house and *Page 293 
a large quantity of tobacco stored therein, destroyed by fire on 3 November, 1920, and by certain insurance companies, which had paid to the owners of said property sums of money due under policies of insurance issued by them, were consolidated for trial. It was alleged in the complaints in said actions that the fire which destroyed said pack house an tobacco was set out by the negligence of defendants. This allegation was denied in answers filed by defendants. At the close of all the evidence, motion for judgment as of nonsuit was allowed. Plaintiffs excepted. From judgment in accordance with said motion, plaintiffs appealed. The only assignment of error upon appeal is based upon the exception of plaintiffs to the judgment of nonsuit.
A pack house, owned by N. F. Dickerson, in which was stored a large quantity of tobacco, owned by Dickerson and his tenants, was destroyed by fire on 3 November, 1920. Certain insurance companies, which had issued policies of insurance on said property, paid to Dickerson and his tenants the amounts, for which they were severally liable, under said policies, by reason of the destruction of said property by fire.
On 2 June, 1923, Dickerson and his tenants commenced an action against defendants for the recovery of damages sustained by them because of the destruction of said pack house and tobacco. They allege that the property destroyed was of the value of about $30,000; that they received from insurance companies, on account of said loss, about $11,000 in settlement of the amounts due on policies covering said property; they demand judgment against defendants for the difference between the value of the property destroyed and the amount received by them from the insurance companies.
The insurance companies thereafter commenced actions against defendants in which they allege that prior to 3 November, 1920, they had severally issued policies of insurance to N. F. Dickerson and his tenants, insuring them against all direct loss by fire, said policies covering the pack house and tobacco stored therein; that by reason of the destruction of said property by fire, on 3 November, 1920, they became severally liable to the owners of said property in various amounts which they have paid; that by the provisions of their several policies, they have become subrogated to the rights of the owners of said property to recover damages from the person or persons who are liable for the same to the extent of the amounts severally paid by them. They *Page 294 
demand judgment against defendants for the amounts severally paid by them to N. F. Dickerson and his tenants.
Plaintiffs, in their several complaints, allege that on 3 November, 1920, defendant, Norfolk Southern Railroad Company, by and through its engineer, James K. Daugherty, was operating an engine and log cars on the spur track running from its main track, near the said pack house, to Munger Bennett's Mill, on Trent River, at James City; that while so operating said engine and cars, defendants negligently permitted said engine to emit sparks and coals of fire therefrom which fell upon and set fire to said pack house and tobacco, causing the complete destruction of same; that defendants so operated said engine without a spark arrester, or with a defective spark arrester; that the engineer was negligent and incompetent, and operated the engine in a negligent manner.
Defendants, in their answers, denied all allegations of negligence.
The evidence offered by plaintiffs with respect to the origin of the fire which destroyed the pack house and its contents, was as follows:
F. A. Fulcher testified that he is a surveyor and that at the request of plaintiff, N. F. Dickerson, during October, 1924, he made a survey of the Norfolk Southern switch track extending from its main track to Munger 
Bennett's Mill; that Mr. Dickerson showed him the location of the pack house, which was burned 3 November, 1920; the distance from the nearest point of the location of the pack house, as shown him by Mr. Dickerson, to the switch track was eighty-one feet; at this point the pack house was north of the switch track; this track was in a curve all the way from the main track to the mill-yard. It was located not far from the public road. There were other houses located in there, along the public road. The houses on the east side of the road are negro shacks. Munger Bennett's Mill is located near the river, about a quarter of a mile to the north of where the pack house was located; in addition to their mill they have, and operate, a planing mill. In both mills there are a number of boilers and smoke-stacks.
N. F. Dickerson testified that on the afternoon of 3 November, 1920, the wind was blowing about northeast; that he saw the engine of defendant shifting on the switch track, passing the pack house, from Munger 
Bennett's Mill to the Clark Lumber Company's plant; black smoke, coming from the engine, was blown across the pack house; the train switched in there for from a half to three-quarters of an hour. Witness saw the engine shifting between 4 and 4:30 p. m.; he saw only one train on the switch track that afternoon; he was at work during the afternoon about 250 feet from the pack house; he left the *Page 295 
farm some time before dark — between a quarter to and a quarter past 5 o'clock. The last place witness was in before leaving the farm was the pack-house yard. There was no fire in or about the pack house during the day.
Witness first heard of the fire when some one called him on the phone at his home in New Bern; he went at once, by automobile, to the pack house; when he got there the fire was burning on the roof. There was no fire below. The pack house and tobacco were completely destroyed.
There was no arrangement of any kind in the pack house for fire. There was no chimney, fireplaces or flues. The pack house had a shingle roof. It was located about 50 or 60 feet from the public road leading into New Bern.
Mrs. Sadie Dickerson, sister-in-law of N. F. Dickerson, testified that she lived in James City, a settlement across the river from New Bern, not very far from the pack house; she saw the fire about 6 o'clock, after her family had had supper. It was then burning on top, about middle way, very rapidly. She saw the Norfolk Southern shifter that afternoon, on the switch track, between a quarter to 5 and 5 o'clock. The smoke from the shifter was going toward the pack house. The side of the roof next to the track was burning when she first saw the fire.
K. L. Dickerson, husband of Mrs. Sadie Dickerson, testified that he had not been on the farm where the pack house was located that day. He got home about 5:30 or a quarter to 6. His wife called him when she saw the fire, about 6 or quarter past 6 o'clock. He went at once to the fire and found the roof of the pack house burning on top, next to the railroad. The wind was blowing from the northwest. It was burning a pretty good blaze when he got there.
J. T. Cherry, one of the tenants who had tobacco in the pack house, testified that he went to the farm on which the pack house was located, at about 8 a. m. on 3 November, 1920; that he took tobacco out of the pack house about 12 o'clock, to the grading shed; that he remained on the farm until a little before sundown. There was no fire there when he left. Witness saw the train on the switch track during the afternoon and observed heavy, black smoke coming from the engine and passing over the pack house. He knew nothing of the fire until next morning.
W. T. Messic, another tenant who had tobacco in the pack house, testified that he was eating supper between 5:30 and 6 o'clock when he first discovered the fire. He lived about 300 yards from the pack house. The fire was on the side next to the railroad. Witness saw the shifter on the switch track that afternoon, about 4 o'clock. A lot of black smoke was coming from the engine and going in the direction of the *Page 296 
pack house. He went to the fire. It was burning pretty rapidly when he got there. If the roof had been on fire when he left to go to supper he would have seen it. He looked at the pack house after the engine passed it. He had been home long enough to eat supper before the alarm of fire was given.
Albert Spivey testified that he lived in James City on 3 November, 1920, the day of the fire; that he saw the shifter in the mill yard of Munger 
Bennett between 3 and 4 o'clock that afternoon; that he crossed the track and saw smoke coming from the engine; there were dead cinders in the smoke, which went in the direction of the pack house. When he saw the fire he had eaten supper and was out in the street in James City. He left Munger 
Bennett's Mill before 5:30 p. m.
There was much evidence as to the quantity and quality of the tobacco stored in the pack house and destroyed by fire.
Defendant's motion for judgment of nonsuit, made at the close of plaintiff's evidence, was reserved by the court until the conclusion of all the evidence.
Defendants offered evidence as follows:
James K. Daugherty testified that he was employed during 1920 as an engineer by Norfolk Southern Railroad Company; that prior to 3 November, 1920, he had operated yard engine No. 6 for about 130 days, and since said date, for 12 or 18 months. On 3 November, 1920, witness went on duty at 1 p. m., and took said engine, with one car, to Munger Bennett's Mill; he got back from James City about 2 o'clock, bringing one car from the mill. He did not operate an engine on the switch track on that day after 2 o'clock. Between 6 and 7 o'clock p. m., while at Trent River, he saw the fire at the pack house. His engine was not throwing sparks on 3 November, 1920. The condition of the spark arrester on the engine on that day was good. It was equipped with a spark arrester. Green, new coal burned in an engine causes black smoke.
Sam Brock, fireman on engine No. 6, testified that he went with Mr. Daugherty on said engine on 3 November, 1920, to James City. They went over there about 1 o'clock with one box car, and made a switch in Munger 
Bennett's yard; they got back to New Bern at about 2 o'clock and did not go back that day. No shifting was done that day near the pack house. The engine was not throwing sparks that day.
Witness fired his engine after he left New Bern, and while he was over the river at Munger Bennett's Mill. He covered the fire with fresh coal, which made a lot of smoke, but no sparks. He kept up enough steam while on the switch track to pull one car. The engine passed the pack house between 1 and 2 o'clock. The engine was inspected every day. *Page 297 
Roy Perry, yard conductor for Norfolk Southern Railroad, testified that he was in charge of engine No. 6 on 3 November, 1920; they left New Bern on that day about 1 o'clock; went to Munger Bennett's, carrying and bringing back one car; it took about 15 or 20 minutes to do the work at the mill on that day. The train passed the pack house going in and coming out; no switching was done near the pack house. Witness operated engine No. 6 about six years; never saw it throw sparks.
Will White, brakeman, testified that on 3 November, 1920, they left New Bern about 1 o'clock, remained in James City ten or fifteen minutes, and got back to New Bern at about 2 o'clock; carried over one car and brought back one car. Witness rode on top of the car and did not feel or see any sparks from the engine. The smoke was coming right over him.
Mr. Sanders, yard master, testified that he had control and direction of all shifting engines in the yard. The record in witness' office shows that on 3 November, 1920, one car of lumber was placed at Munger Bennett's yard, and one car pulled out. The crew on engine No. 6 came on duty at 1 o'clock. Witness directed them to go to James City. Only engine No. 6 was sent to James City that day. It was back in New Bern at 2 o'clock.
Witness had known James K. Daugherty for 17 years. His general reputation and character is good. There is no better engineer than Mr. Daugherty.
O. H. Hill testified that he is a boiler maker; on 2 November, 1920, witness examined engine No. 6; also examined it on 3 and 4 November and subsequent days; that it was in good condition; no repairs made to either spark arrester or ash pan. Witness inspected engine No. 6 on 10 October, 1920, and then patched the spark arrester and ash pan. After these patches had been put on the engine was as good as new.
Harvey Kehoe, general foreman of Norfolk Southern shops for 13 years prior to 1921, testified that he had known James K. Daugherty since 1906; that his general character and reputation was good; that his capacity as an engineer was good; he was a competent engineer. Witness had operated a locomotive engine for about thirty-eight years; black smoke is caused by green coal — absolutely no sparks in it.
Howard Bobbitt, road foreman of engines for defendant railroad company, testified that engine No. 6 received general repairs in April, 1920; on 3 November, 1920, its condition was good, as good as a new engine.
At the conclusion of all the evidence, the court being of opinion that there was not sufficient evidence of negligence to be submitted to the *Page 298 
jury, upon defendant's motion, dismissed the action as upon a nonsuit, under C. S., 567.
Applying to this evidence the rule well settled for the consideration of evidence upon a motion for judgment of nonsuit, Lindsey v. Lumber Co.,189 N.C. 118, the following facts may be found therefrom:
1. The pack house and tobacco stored therein, located at a distance of 81 feet from the switch track of the Norfolk Southern Railroad Company, and of 50 to 60 feet from the public road, leading into James City, were destroyed by fire on 3 November, 1920;
2. Engine No. 6, used in and about New Bern by defendant railroad company as a shifter or switch engine, during the afternoon of said day, entered upon the switch track, and carried one car to the Munger Bennett Mill, at the end of said switch track; it passed the pack house and while on the track was shifting or switching for about a half to three-quarters of an hour; it passed the pack house on its return from the mill, with one car, to New Bern; while thus engaged the engine put out heavy, black smoke, with dead cinders, which was blown by a strong wind across to and over the pack house; there is no testimony that the engine emitted sparks or live coals while passing or repassing the pack house.
3. The engine was on the switch track not later than 4:30 or 5 p. m.; fire was first discovered, burning on the top of the pack house, near the middle, on the side next to the track, at about 6 p. m.; a strong wind was blowing and the fire on the shingle roof was burning rapidly in a blaze; the building and contents were quickly consumed by the fire, making a total loss.
4. Engine No. 6 was the only engine which defendants, Norfolk Southern Railroad Company, operated on the switch track, passing by the pack house, during the afternoon of 3 November, 1920; it had been repaired in April, 1920, and was then as good as a new engine; it was equipped with a spark arrester which, with the ash pan, had been patched on 10 October, 1920; it was inspected on 2 and 3 November, 1920, and was in good condition; it did not throw out or emit sparks. James K. Daugherty, in charge of said engine, was a competent engineer; the heavy, black smoke was caused by the fireman putting fresh coal on the fire in the engine while it was at the Munger 
Bennett Mill; the engine, at no time during the afternoon, while on the switch track, was pulling more than one car; only sufficient steam was kept up for this purpose.
There is no direct evidence from which the jury could find that sparks emitted by defendant's engine set fire to the pack house; the facts and circumstances, which the jury could have found from the evidence, *Page 299 
under correct instructions from the court are not sufficient to support the inference that the fire originated from such sparks. The facts that the engine passed and repassed a point on the track 81 feet from the pack house, and at the time was putting out a heavy, black smoke, which the wind blew over to and across the pack house, were not sufficient to support a finding, as a fact, that the fire discovered on the shingle roof, burning rapidly in a blaze, nearly an hour thereafter, during which a strong wind was blowing, was caused by sparks emitted from the engine as alleged in the complaint.
In Moore v. R. R., 173 N.C. 311, Justice Brown says: "It is undoubtedly true that the fact in controversy here, as to the origin of the fire, may be established by circumstantial evidence, but the circumstances proven must have sufficient probative force to justify a jury in finding that the fire originated from a spark from defendant's engine before the issues can be submitted to them."
The rules applicable in actions to recover damages caused by injury or destruction of property, by fire, upon allegations of negligence, formulated by Chief Justice Clark in Williams v. R. R., 140 N.C. 623, and approved by Justice Walker in Aman v. Lumber Co., 160 N.C. 369 as just, are each predicated upon the fact that the fire, which injured or destroyed the property, escaped from defendant's engine. Until that fact has been established by evidence, no prima facie case is made for plaintiff. In the instant case, as in Moore v. R. R., supra, the building burned was located on the side of the railroad, off the right of way; the wind was blowing from the railroad toward the building. The fire, when discovered, was burning on the side of the building next to the railroad. An engine had passed not less than thirty minutes or more than an hour before the fire was discovered. There was no evidence that the engine, which passed the building before the fire was discovered, was throwing sparks, nor was there evidence that fire had burned from the track to the building. Defendants' evidence established the facts that the engine was equipped with a spark arrester, in good condition, and that the engineer in charge was competent and was operating the engine in a skillful manner.
In Boney v. R. R., 175 N.C. 354, there was evidence that the passing engine was throwing sparks and the refusal of the motion to nonsuit was sustained by this Court. Justice Hoke, in the opinion of the Court, distinguishes Moore v. R. R., supra, from Boney v. R. R., saying that in the Moore case there was no evidence offered that sparks were thrown from the engine or that same was in any way defective, whereas there was such evidence in the Boney case.
In Bailey v. R. R., 175 N.C. 699, the refusal of the motion of nonsuit was sustained because there was evidence from which the jury could *Page 300 
fairly and reasonably infer and conclude that the engine emitted sparks or live coals which fell upon defendant's right of way, which was in a foul and inflammable condition, and started the fire which burned plaintiff's property.
In Perry v. Mfg. Co., 176 N.C. 70, Justice Walker, approving the charge of the court below, that if the fire was caused by defendant's engine emitting sparks or coals, which fell upon plaintiff's land and caused the fire, the burden would be shifted to defendant to show that the fire was not due to any defective condition of its engine, or to any negligence in its management or operation, says: "There was ample evidence to show that the fire was caused by defendant's engine." See, also, Bradleyv. Mfg. Co., 177 N.C. 153; Williams v. Mfg. Co., 177 N.C. 512. The instruction to the jury in the latter case was held subject to criticism, but not reversible error; there was evidence of other facts than those embodied in the instruction assigned as error tending to show that the fire originated from sparks emitted by the engine. Justice Walker says: "The fact that a spark from the engine caused the fire, whether on or off the right of way, is evidence of negligence, though not conclusive."
In Cotton Oil Company v. R. R., 183 N.C. 95, Justice Adams says in the opinion for the Court, discussing the effect of a prima facie case for the plaintiff: "When the plaintiffs proved that the property had been destroyed by fire escaping from defendant's locomotive, they made a prima facie case of negligence for the consideration of the jury; or as Mr. Justice Pitney
says, such proof furnished circumstantial evidence of negligence; but it did not impose upon defendant the burden of rebutting the prima facie case by the preponderance of the evidence and standing alone, the prima facie case warranted but did not compel the inference of negligence; it furnished evidence to be weighed, but not necessarily to be accepted; it made a case to be decided by the jury but did not forestall the verdict." White v.Hines, 182 N.C. 288; Speas v. Bank, 188 N.C. 524; Hunt v. Eure,189 N.C. 482.
In the instant case there is no evidence from which the jury could find, or fairly and reasonably infer and conclude the fact, which under our decisions, would make a prima facie case, to wit, that the fire which destroyed the pack house and its contents was caused by sparks or live coals emitted by defendant's engine. The evidence, if submitted to the jury, would leave them to conjecture and speculate as to the origin of the fire; this is not sufficient. Whittington v. Iron Co., 179 N.C. 647; S.v. Bridgers, 172 N.C. 879; Liquor Co. v. Johnson, 161 N.C. 75; Lewis v.Steamship Co., 132 N.C. 904. In the latter case this Court approved the rule that evidence which merely shows it *Page 301 
possible for the fact in issue to be as alleged, or which raises a mere conjecture that it is so, is an insufficient foundation for a verdict and should not be left to the jury.
There was no error in allowing the motion to dismiss the action as upon nonsuit. The judgment is
Affirmed.
STACY, C. J., dissents.