Defendant owns and operates a transmission line over which electricity is transmitted, composed of a number of wires and other apparatus, extending from its plant at Blewett's Falls, in Richmond County, to Raleigh, N.C.; said wires are supported by towers and other devices for the operation of said transmission line; to prevent the escape of electricity transmitted over said line by defendant, devices known as insulators are employed. This transmission line passes over and across the lands of plaintiff in Moore County. Defendant owns a right of way over said lands, having acquired same by deed prior to the purchase of said lands by plaintiff. The transmission line was constructed and passes over said right of way.
During the afternoon of 4 July, 1923, a fire burned over plaintiff's land, destroying trees and vegetation thereon, and otherwise injuring the same. Plaintiff alleges that said fire began on defendant's right of way, on his land, immediately beneath tower No. 217, on which there was an insulator; that said insulator was weak and defective; that during the said afternoon, defendant's transmission line became excessively charged with electricity, causing the said insulator to become very hot; that because of the heat, and of its defects, the insulator, made of iron, porcelain and cement, burst; that its broken parts, very hot and in a moulten condition, dropped to the ground, and ignited the dry grass and decaying vegetation which had accumulated on the right of way, beneath said tower; that the fire which burned over and injured plaintiff's land spread from this burning grass and vegetation. These allegations are denied by defendant.
The issues submitted to the jury were answered as follows:
1. Were the lands of plaintiff burned and injured by the negligence of defendant, as alleged in the complaint? Answer: Yes.
2. If so, in what sum, if anything, is the defendant indebted to plaintiff on said account? Answer: $800.
From judgment on this verdict, defendant appealed to the Supreme Court.
The first assignment of error, discussed in the brief for defendant, is the refusal of the court to allow the motion for judgment as of nonsuit, made at the close of the evidence offered by plaintiff, and renewed at the close of all the evidence; C. S., 567. This assignment of error presents to this Court the contentions upon which defendant chiefly relies upon its appeal from the judgment of the Superior Court. Defendant contends that there was no evidence sufficient to show that the origin of the fire was as alleged in the complaint; that if the fire began as alleged, there is no evidence that the bursting of the insulator was caused by the negligence of defendant, as alleged; that if the fire originated from burning grass and vegetation ignited by broken parts of the insulator, which had dropped from the tower, in a moulten condition, and if the insulator burst as the result of heat caused by excessive electricity on the wire, this was the result of a stroke of lightning — an act of God — and was not due to negligence of defendant, as alleged.
Defendant further contends that if its right of way was in the condition which the evidence tends to show, this was not, in itself, negligence, for that the law applicable to a railroad company, operating steam engines over the tracks on its right of way, is not applicable to defendant, which maintains over its right of way lines for the transmission of electricity for the purpose of furnishing light and power to its patrons.
Unless there is evidence from which the jury could find, or fairly and reasonably infer and conclude that the grass and vegetation on defendant's right of way, beneath the transmission line, was ignited by broken parts of the insulator on the tower above, which had dropped therefrom, very hot and in a moulten condition, and that the fire which burned over plaintiff's lands spread from such burning grass and vegetation, defendant's motion for nonsuit must be allowed, for unless plaintiff's allegation as to the origin of the fire is sustained he cannot recover. The evidence submitted to the jury must be of sufficient probative force, if believed, to establish the primary fact involved in the issue. If the evidence would leave the jury to conjecture and speculate as to the origin of the fire, then it is not sufficient to be submitted to the jury. Dickerson v. R. R., ante, 292,129 S.E. 810; Whittington v. Iron Co., 179 N.C. 647, 103 S.E. 395; S. v.Bridgers, 172 N.C. 879, 89 S.E. 804; Liquor Co. v. Johnson, 161 N.C. 75,76 S.E. 625; Lewis v. Steamship Co., 132 N.C. 904, 44 S.E. 666. The rule has been approved by this Court that evidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it is so, is an insufficient foundation for a verdict, and should not be submitted to a jury.
On the other hand, if there is evidence from which the jury could find, or fairly and reasonably infer and conclude that the grass and vegetation *Page 667 
were ignited by the broken parts of the insulator on defendant's tower, which had dropped thereon as a moulten mass, and that the fire which burned plaintiff's lands originated from the burning grass and vegetation, thus ignited, then the evidence is sufficient to be submitted to the jury, to be considered by them, under proper instructions of the court, upon plaintiff's allegation as to the origin of the fire. The fact if found by the jury, that the fire was originated by the moulten mass, composed of broken parts of the insulation on defendant's transmission line, would in itself be evidence of negligence. Cotton Oil Co. v. R. R., 183 N.C. 95,110 S.E. 600; Perry v. Mfg. Co., 176 N.C. 69, 97 S.E. 162; White v.Hines, 182 N.C. 288, 109 S.E. 31; Speas v. Bank, 188 N.C. 524,125 S.E. 398; Hunt v. Eure, 189 N.C. 482, 127 S.E. 593.
There was evidence tending to show that the fire, burning on plaintiff's land, on 4 July, 1923, was first discovered about 3 o'clock in the afternoon; that at that time about half an acre of land, to the north of tower No. 217 had been burned over; the fire was then burning all the way down to within six feet of the tower on the southeast side; the wind was coming from the southeast and the fire going to the northwest. It was dry weather; the wind was stirring, but it was not very windy; the land around the tower was burned.
An insulator on the tower was broken, but it was still supporting the wire which was attached to it; there was nothing the matter with the tower line, except that the cups on two of the insulators were knocked off. Wire grass and stumps, lightwood knots and dead wood were burning. On the ground, beneath the tower, a moulten mass was found about two hours after the fire was first discovered. It was then cold. This mass was exhibited to the jury. There were some fine pieces and some large pieces on the ground. They were fragments of a broken insulator; the fire was burning within three feet of the moulten mass, and these fragments.
On Friday, 29 June, 1923, a patrolman, employed by defendant, inspected tower No. 217; he found all the insulators on said tower in perfect condition; none were broken; on Friday, 5 July, 1923, the patrolman again inspected said tower, when he found that two of the insulators — No. 1, at the bottom, and No. 2, next above it — were broken: nearly all the porcelain on insulator No. 1 was knocked off, and there was a little check on insulator No. 2, indicating that a small portion of the porcelain had been broken from it. The wires were still in position. Each wire is supported by seven insulators. There were seven wires to the tower, six service wires and one brace wire. On Sunday following, the patrolman fixed the broken insulators. An insulator is made of porcelain which is a nonconductor of electricity. This porcelain is held *Page 668 
in an iron cup, by cement. The purpose of the insulator is to prevent the escape of electricity transmitted on the wire, at the towers. Each insulator is supposed to insulate from thirty to thirty-five thousand volts. Seven insulators are used on each tower for safety. The minimum insulation between the live wire at the bottom and the tower is 210,000 volts — 30,000 to each of the seven insulators. The maximum voltage on the wires of defendant on 4 July, 1923, was around 94,000 volts. A stroke of lightning carries a voltage from a million up. There are indicators both at Blewett's Falls and at Raleigh which show when lightning has struck any of the insulators along the transmission line between those two points. According to these indicators, the tower line was disturbed by a stroke of lightning about 2 p. m. on 4 July, 1923. The fire on plaintiff's land, near tower No. 217, was discovered about 3 p. m., according to the testimony of the witness who first saw it.
This evidence is sufficient, if believed by the jury, to establish the following facts:
1. That the fire which burned over plaintiff's lands originated on defendant's right of way across said lands, at a point beneath tower No. 217.
2. That prior to the said fire, an insulator on said tower No. 217, was broken, and that the broken parts and fragments of said insulator dropped to the ground beneath the tower.
3. That the fire began at or near the place on defendant's right of way beneath said tower, where said broken parts and fragments were found, while the fire was burning.
4. That the insulator, which was broken on 4 July, 1923, was not broken, but was in perfect condition, on 29 June, 1923, when tower No. 217 was inspected by defendant's patrolman.
5. That said insulator was broken because it was subjected to heat of sufficient intensity to melt the iron, cement and porcelain of which it was composed; that when the broken parts dropped to the ground they were a moulten mass, and that there was dry grass and decaying vegetable matter on the ground when said moulten mass dropped from the tower to the ground.
6. That the electricity put on the wires composing the transmission line between Blewett's Falls and Raleigh, by defendant during 4 July, 1923, was not to sufficient intensity to cause the insulator to break, resulting in the dropping of broken parts in a moulten mass and of fragments of said insulator to the ground.
7. That about 2 o'clock on the afternoon of 4 July, 1923, lightning struck the wires on defendant's transmission line between Blewett's Falls and Raleigh; that the voltage from a stroke of lightning greatly exceeds the voltage of electricity used by defendant over its wires in the conduct *Page 669 
of its business of transmitting electricity to be used for lights and power by its patrons.
Only one other fact is necessary to be established in order to sustain plaintiff's allegation as to the origin of the fire, to wit, that the moulten mass, composed of broken parts of the insulator, when it fell upon the ground, ignited the dry grass and decaying vegetable matter which was on the right of way beneath the tower. We are of the opinion that under the rule approved by this Court, this fact may be fairly and reasonably inferred by the jury from the facts and circumstances shown by the evidence. In finding said fact, the jury would not be left to mere speculation and conjecture. There was no error in refusing the motion for judgment of nonsuit upon defendant's contention that the evidence was not sufficient to sustain plaintiff's allegation as to the origin of the fire.
It is held by this Court, in Moore v. R. R., 173 N.C. 311, that where the fact in controversy is as to the origin of a fire, such fact may be established by circumstantial evidence, and that where the circumstances proven have sufficient probative force to justify a jury in finding that the fire originated from a spark set out by defendant's engine, the evidence should be submitted to the jury. The evidence in this case meets the test approved by Prof. Wigmore, vol. 5, 2 ed., sec. 2494, as follows: "Are there facts in evidence which, if unanswered, would justify men of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain?" While the origin of the fire, which it is alleged caused damage to plaintiff, must be fixed by the evidence upon defendant, in order that it may be held liable for the damages, this may be done by evidence sufficient to support a fair and reasonable inference from facts established by the evidence that the fire was set out by defendant, or by some agency under its control and for which it was responsible.
"In actions against railroad companies for injuries to property by communicated fires, while it is necessary to trace the liability for the fire to the defendant, and proof of a mere possibility that the fire communicated arose in the operation of the road is not sufficient, yet it is not required that the evidence should exclude all possibility of another origin, or that it be undisputed. It is sufficient if all the facts and circumstances in evidence fairly warrant the conclusion that the fire did not originate from some other cause, and the origin of the fire has generally been held sufficiently established by inferences drawn from circumstantial evidence." 11 R. C. L., p. 994, sec. 46. We see no reason why this statement of the law, supported by abundant citations, should not be applicable to actions against light and power companies transmitting and dealing in electricity, for damages to property caused by fire, alleged to have been caused by negligence. Peterson v. Power Co., 183 N.C. 243. *Page 670 
It may be conceded that there is no direct evidence of positive negligence on the part of defendant, with respect to the condition of the insulator, alleged to have been weak and defective, or with respect to an excessive voltage of electricity put on its transmission line by defendant during the afternoon of 4 July, 1923, sufficient to cause the insulator to burst, on account of heat generated by the electricity. It may further be conceded that a stroke of lightning caused excessive voltage of electricity on said lines resulting in the bursting of the insulator, and the dropping of the broken parts, in a moulten mass, upon the ground below the tower. This was an act of God; the defendant cannot be held liable for damages caused solely by a stroke of lightning. Harris v. R. R., 173 N.C. 110;Tuthill v. R. R., 174 N.C. 77.
The court instructed the jury as follows: "Where injuries result from an act of God, no one is responsible, whether there is any connection between an act of an individual or a corporation, and the act of God, but where there is a concurring responsibility between the act of an individual and an act of God, and where the concurring responsibility of the individual continues up to and is an efficient cause in producing damage, then it is said to be actionable negligence; the Supreme Court in Comrs. v. Jennings,181 N.C. 393 has said, approving the statement of the law of Shearman 
Redfield on Negligence, vol. 1 (Street's ed.), p. 76, sec. 39, `It is universally agreed that if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the act of God, or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage. It is also agreed that if the negligence of the defendant concurs with the other cause of injury, in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force, which, concurring with his own negligence, produced the damage.'"
Defendant, conceding this to be a correct statement of the law, excepted to the instruction and assigns same as error. Defendant thus presents its contention that if the condition of its right of way on 4 July, 1923, was as the evidence tends to show, this condition was not negligence, which concurring with the bursting of the insulator, caused by a stroke of lightning, caused plaintiff damage. Defendant earnestly insists that the rule, well settled by the decisions of this Court, that it is negligence for a railroad company operating over its right of way locomotive engines propelled by steam, to permit such right of way to become foul with inflammable matter, should not be applied to a power company which *Page 671 
has constructed and maintains over its right of way lines for the transmission of electricity. In his charge to the jury, his Honor, in effect, instructed them that notwithstanding they should find that the insulator was broken by a stroke of lightning, for which defendant could not be held responsible, if they found that the right of way, beneath the tower, was covered with dry grass and decaying vegetation, which was inflammable, this would be negligence, and if one of the concurring causes of the injury sustained by plaintiff, it would be actionable negligence.
There was evidence tending to show that before the fire defendant's employees had chopped down bushes on the right of way, which had been left there; that they were dry. Wire grass on the right of way, near the tower, had not been burned off for a number of years. Nothing had been done to clean off the right of way since the preceding summer when the bushes were cut down and left on the right of way.
In Moore v. R. R., 124 N.C. 339, it was admitted by the plaintiff that the engine was in good condition, and had a proper spark-arrester and was skillfully operated. With this admission, the question of negligence in having defective machinery was eliminated. It was held in the opinion written by Chief Justice Faircloth that "if sparks should escape from such an engine as the above, properly handled, and should set on fire combustible matter along the right of way, the defendant would be liable for injuries resulting therefrom, not because the sparks escaped, but for allowing inflammable matter to remain on the premises; but if sparks from such an engine go beyond the defendant's right of way and ignite such matter, over which the defendant has no control, it would not be guilty of negligence in that respect, nor for the escape of the sparks." This statement has been cited and approved so frequently that it is conceded to be the law relative to railroad and lumber companies, operating steam engines on their right of ways. In the instant case, if the jury should find that the fire was set out by the broken parts of the insulator, but that there was no negligence in that respect because the insulator was in good condition and was broken by a stroke of lightning, there still remains the question as to whether defendant was negligent with respect to the right of way, and if so, whether such negligence was an efficient, proximate cause of plaintiff's injury.
In Pollock on Torts, 12 ed., page 442, the general rule, as stated byBaron Alderson, is approved: "Negligence is the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do." When defendant constructed its transmission line from Blewett's Falls to Raleigh, over its right of way, acquired by deed or as the result of condemnation proceedings, it found it necessary, in order to install its wires, to place *Page 672 
towers along its right of way; for the purpose of preventing the escape of electricity at these towers, and also for purposes of safety, it installed at each tower insulators, the maximum capacity of each insulator being 30,000 volts; if the electricity on the wires at any one time exceeds the maximum, it is probable that the insulators will become so heated that they will burst, and that the broken parts will fall to the ground beneath the tower. A stroke of lightning carries a voltage from a million upwards. There is always during the summer time, a probability of lightning striking the wires on the transmission line. A reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, and regardful of the rights of others, would foresee the probability of fire originating on the right of way, from the dropping of heated masses of metal or porcelain upon inflammable matter beneath the tower. No reason presents itself to us why we should not approve his Honor's instruction to the jury that it was negligence for the defendant to permit dry grass and decaying vegetable matter to remain on its right of way, under and about its tower No. 217, under circumstances which they might find from the evidence submitted to them.
If the right of way beneath the tower had been free of inflammable matter, the moulten mass and fragments of the shattered insulator would have quickly cooled, and no harm would have resulted to plaintiff.
The assignment of error is not sustained. The judgment is affirmed. There is
No error.